Charles L. WISE, Blanche J. Hartley, Executrix for the Estate of Okey Hartley, Sheila J. Brown, Executrix for the Estate of James Ash, George W. Yocum, John Weaver, Louis C. Goet. Gerald C. Barlow and Teresa M. Barlow, Brenda Malone, Personal Representative for the Estate of Ger-

---

ald Emerson Malone, James Simmons, Wanda Mellott, Personal Representative for the Estate of James Mellott, and Tab F. Eddy, Personal Representative for the Estate of Edward Lyle Eddy, Plaintiffs,

v.

TRAVELERS INDEMNITY COMPANY, Travelers Insurance Company, Travelers Property Casualty Corp., Citigroup, Inc., Commercial Union Insurance Company, Aetna, Inc., Aetna Casualty and Surety Company, Aetna Life and Casualty Company, Insurance Company of North American (INA), Ace, Ltd., Ace USA, Cigna Corporation, White Mountains Insurance Group, Ltd., and A & I Company, Defendants.

Civil Action No. 3:01–CV–86.

United States District Court, N.D. West Virginia.

Feb. 22, 2002.

Barry Morton Hill, Leslie Crosco, Hartley, O'Brien, Parsons, Thompson & Hill, Wheeling, WV, John H. Skaggs, Calwell & McCormick, Charleston, WV, R. Dean Hartley, Hartley, O'Brien, Parsons, Thompson & Hill, Wheeling, WV, David P. Chervenick, Bruce E. Mattock, Goldbert, Persky, Jennings & White, Pittsburgh, PA, J. David Cecil, James Humphreys & Associates, LC, Charleston, WV, Stuart Calwell, The Law Offices of Stuart Calwell, PLLC, Charleston, WV, Ronald L. Motley, Donald A. Migliori, Anne McGinness Kearse, Ness, Motley, Loadholt, Richardson & Poole, PA, Mt. Pleasant, SC, William K. Schwartz, Harvit & Schwartz, LC, Charleston, WV, Gary O. Galiher, Galiher, Deroberties, Nakaumra, Ono & Takitani, Honolulu, HI, for Plaintiffs.

Barry R. Ostrager, Simpson, Thacher & Bartlett, New York City, Jeffrey M. Wakefield, Andrew B. Cooke, Michael Bonasso, Erica M. Baumgras, Flaherty, Sensabaugh & Bonasso, Chaleston, WV, Andrew T. Frankel, Robert F. Cusumano, Mark G. Cunha, Simpson, Thacher & Bartlett, New York City, Wm. Richard McCune, Jr., Martinsburg, WV, John J. Polak, Rose and Atkinson, Charleston, WV, Robert Stillman, Hartford, CT, Eric J. Mayer, Susman Godfrey, Houston, TX, Clarence E. Martin, III, Martin & Seibert, LC, Martinsburg, WV, Dale A. Buck, Martin & Seibert, Martinsburg, WV, Clifton S. Elgarten, Mark D. Plevin, Luther Zeigler, Paul W. Kalish, David Hagen, Crowell & Moring, LLP, Washington, DC, Kenneth J. Barton, Jr., Steptoe & Johnson, Martinsburg, WV, Paul R. Koepff, O'Melveny & Myers, LLP, New York City, Elaine Klinger, Christie, Pabarue, Mortensen & Young, Philadelphia, PA, Gerald V. Weigle, Jr., Amy M. Shohl, LLP, Cincinnati, OH, John H. Tinney, John H. Tinney, Jr., The Tinney Law Firm, PLLC, Charleston, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER

BROADWATER, District Judge.

On this day this matter came before the Court for review of 1) the plaintiffs' motion to remand this case to the Circuit Court of Berkeley County, West Virginia or in the alternative for abstention on the issue of subject matter jurisdiction under 28 United States Code § 1334[1] and 2) defendant Century Indemnity Company's motion for transfer of venue to the United States Bankruptcy Court for District of Delaware.[2] For reasons more completely explained below, the Court GRANTS the

motion for remand and the remaining motions are DENIED as moot.

## I. STATEMENT OF FACTS

Plaintiffs instituted this action in the Circuit Court of Berkeley County, West Virginia on October 25, 2001. Plaintiffs seek to recover damages incurred as a result of alleged tortious acts by defendants in relation to settlement offers accepted by plaintiffs. The named plaintiffs allege that they are residents of West Virginia, Massachusetts, New York, Connecticut, Pennsylvania, and Delaware. The plaintiffs claim that the defendant insurance companies are also residents of West Virginia, Massachusetts, Connecticut, Pennsylvania, New York and Delaware.

This action seeks to invoke W.Va.Code § 33–11–4 of the West Virginia Unfair Trade Practices Act, which prohibits unfair insurance trade and settlement practices. The plaintiffs charge that the defendants violated this statute in processing, adjusting and defending asbestos personal injury claims in West Virginia. The plaintiffs assert that the claims in this action are based on the activities of defendant insurance companies during the discovery, trial, post-trial and settlement of asbestos personal injury cases brought by plaintiffs in West Virginia.

The plaintiffs maintain that the class action aspect of this case only seeks to hold the defendant insurance companies liable to plaintiffs who were exposed to asbestos products in West Virginia or who were allegedly deceived into accepting depressed settlement values or into not asserting a claim as a result of conduct in West Virginia. The plaintiffs claim that

---

**1.** Doc. # 8 and # 12

**2.** Doc. # 15

the conduct by the defendants was done individually and in conspiratorial concert among themselves.

The defendant insurance companies claim that this action is a novel and improper attempt to reopen thousands of long-settled and released asbestos cases by not suing the manufacturers who settled, but by suing their insurers who allegedly assisted in the defense and settlement of the cases. The defendants assert that this lawsuit is one of several in jurisdictions carefully selected by plaintiffs' counsel nationwide in which the national asbestos plaintiffs' bar has targeted the insurance industry as a new defendant to pursue in asbestos litigation. Accordingly, the defendants removed this matter alleging fraudulent joinder of the out-of-state plaintiffs. As well, defendant Century Indemnity Company seeks to have this action transferred to the U.S. Bankruptcy Court for the District of Delaware as a part of the Armstrong World Industries Incorporated bankruptcy.

On October 25, 2001, plaintiffs filed their complaint in the Circuit Court of Berkeley County, West Virginia. On November 26, 2001, Defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1441.[3] Plaintiffs subsequently filed their Motion for Remand and/or to Abstain the case on November 29, 2001.[4]

---

**3.** Doc. # 1

**4.** Doc. # 8 and # 12

**5.** *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 128, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995).

**6.** *Mulcahey v. Columbia Organic Chemicals Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994).

**7.** *Wilson v. Republic Iron and Steel Co.,* 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921).

## II. DISCUSSION OF LAW

### A. REMOVAL AND REMAND STANDARDS

■ The United States Supreme Court has established that removal and remand principles apply in both bankruptcy and non-bankruptcy proceedings.[5] 28 U.S.C. § 1441(a) provides that a party may remove any matter over which the district courts have original jurisdiction. However, the Fourth Circuit has clearly stated that removal statutes must be construed strictly against removal.[6] The strict construction against removal is required because removal jurisdiction raises significant federalism concerns. The party seeking removal to federal court and opposing remand has the burden of establishing federal jurisdiction. This has been a long established principle.[7] If federal jurisdiction is doubtful, remand is necessary.[8] In *Business Men's Assurance Company,* a case cited by the Fourth Circuit's *Mulcahey* decision, the Eighth Circuit held that the district court was required to resolve all doubts in favor of remand.[9]

### B. DIVERSITY JURISDICTION

■ In order for a federal court to have diversity jurisdiction over a civil action, the case must be "between citizens of different states."[10] Under the "complete diversity rule," no party may share common citizen-

---

**8.** *Mulcahey,* 29 F.3d at 151, *citing, In re Business Men's Assur. Co. of America,* 992 F.2d 181, 183 (8th Cir.1993).

**9.** *In re Business Men's Assur. Co. of America,* 992 F.2d at 182 (8th Cir.1993), *citing, Steel Valley Auth. v. Union Switch and Signal Div.,* 809 F.2d 1006, 1010 (3rd Cir.1987), *cert dismissed* 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988).

**10.** *See* 28 U.S.C. § 1332

ship with any opposing party.[11]

■ If a federal court finds that a non-diverse party has been fraudulently joined, it may exercise jurisdiction even though an otherwise non-diverse party is a defendant. However, "[t]he party alleging the fraudulent joinder bears a heavy burden-it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact · in the plaintiff's favor," and that "[t]his standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6)."[12] The exercise of removal jurisdiction is inappropriate where there is at least some possibility that the plaintiff will recover against an allegedly fraudulently joined party.[13]

■ The Fourth Circuit Court of Appeals has further cautioned against district courts placing the burden on the plaintiff to show that his claims may succeed rather than requiring the defendant to negate all possibility of recovery.[14] When considering whether a plaintiff has fraudulently joined defendants to an action for the purpose of destroying diversity, a court must,

"resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party."[15]

The defendants allege that this action could have been filed in federal court pursuant to 28 U.S.C. § 1332 were it not for the fraudulent joinder of defendant A & I Company and the fraudulent joinder of plaintiffs Weaver, Goetz, Barlow, Malone, Simmons, Mellott, and Eddy. A & I Company, a West Virginia corporation, is alleged by the plaintiffs to be a self-insured company and therefore subject to the West Virginia Unfair Trade Practices Act.

■ During oral argument, counsel for plaintiffs acknowledged that A & I may not have been a self-insurer. However, under West Virginia law, a self-insured company qualifies as an insurance company.[16] Whether or not A & I is self-insured is a matter of West Virginia state law and interpretation.[17] Therefore, exercise of removal jurisdiction based upon defendant A & I is inappropriate where there is at least a possibility that the plaintiffs may recover against an allegedly fraudulently joined

**11.** *Jackson v. Allstate Ins. Co.,* 132 F.Supp.2d 432 (N.D.W.Va.2000).

**12.** *Hartley v. CSX Transportation, Inc.,* 187 F.3d 422, 424 (4th Cir.1999), *citing, Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232–33 (4th Cir.1993).

**13.** *McWilliams v. Monarch Rubber Company,* 70 F.Supp.2d 663, 664 (S.D.W.Va.1999).

**14.** *Hartley,* 187 F.3d at 425.

**15.** *Marathon Oil Co. v. Ruhrgas,* 115 F.3d 315, 319 (5th Cir.1997). *See also Crowe v. Coleman,* 113 F.3d 1536 (11th Cir.1997); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.,* 99 F.3d 746, 751 (5th Cir.1996)("In reviewing a claim of fraudulent joinder, the district court must evaluate all factual allegations and ambiguities in the con-

trolling state law in favor of the plaintiff ... If there is any possibility that the Plaintiff has stated a cause of action against any non-diverse Defendant, the federal court must conclude that joinder is proper, thereby defeating complete diversity, and the case must be remanded.").

**16.** *Korzun v. Chang–Keun Yi,* 207 W.Va. 377, 532 S.E.2d 646 (2000)(holding that a self-insured car rental company was an "insurance company" for statutory purposes).

**17.** *Jackson v. Donahue,* 193 W.Va. 587, 457 S.E.2d 524, 530–31 (1995)("[U]nder the law of this state, a foreign commercial trucking corporation which has been granted authority by the West Virginia Public Service Commission to self-insure ... must afford, as a self-insurer, the same coverages under the West Virginia Motor Vehicle omnibus clause statutes....").

party.[18]

The affidavits in support of the out-of-state plaintiffs maintain that these plaintiffs' injuries resulted from exposure to the asbestos-containing products manufactured and distributed by Combustion Engineering, AC & S or A & I in West Virginia. Plaintiffs Weaver and Goetz are residents of Massachusetts. Plaintiffs Barlow and Malone are resident of New York. Plaintiff Simmons is a resident of Connecticut. Plaintiff Mellott is a resident of Delaware. Plaintiff Eddy is a resident of Pennsylvania. As stated previously, the defendant insurance companies are incorporated or doing business in Massachusetts, Connecticut, Pennsylvania, New York and Delaware.[19] Based upon the allegations in the complaint and the plaintiffs' supporting affidavits, the defendants have not shown fraudulent joinder.

The defendants are also claiming that the out-of-state plaintiffs do not have standing to assert a violation of the WVUTPA.[20] The defendants primarily rely on the *Yost* decision. In that case, the Yosts were, at all relevant times, residents of Ohio. They sued the Pennsylvania owner of an automobile in West Virginia where the accident occurred. The Yosts subsequently filed a WVUTPA action against Travelers, a Connecticut corporation. Travelers adjusted the claim out of its Pittsburgh, Pennsylvania office. Although Travelers retained West Virginia counsel in the underlying litigation, the district court granted summary judgment in favor of Travelers based upon Pennsylvania insurance law. The Fourth Circuit, recognizing that the WVUTPA is designed to protect the citizens of West Virginia[21] upheld the district court's decision by concluding that Pennsylvania had the most significant relationship to the occurrence, therefore concluding that Pennsylvania insurance laws applied.

In reference to the removal and remand standards, the Court concludes that the present case is distinguishable from *Yost.* The out-of-state plaintiffs claim they were West Virginia residents when the alleged bad faith occurred, or were exposed to asbestos in West Virginia for which subsequent claims were adjusted in West Virginia by the defendant insurance companies' local counsel. In that regard, the West Virginia Supreme Court of Appeals, subsequent to the *Yost* decision, stated that the

18. Mc*Williams v. Monarch Rubber Co.,* 70 F.Supp.2d 663, 665 (S.D.W.Va.1999).

19. As set forth in Doc. # 1, *Notice of Removal,* "The defendant The Travelers Indemnity Company is incorporated and has its principal place of business in Connecticut. The defendant The Travelers Insurance Company is a Connecticut corporation and has its principal place of business in the State of Connecticut. The defendant Travelers Property Casualty is a Delaware corporation and has its principal place of business in Connecticut. The defendant Travelers Casualty and Surety Company is incorporated and has its principal place of business in Connecticut. The defendant, CitiGroup, Inc. is incorporated in Delaware and has its principal place of business ins the State of New York. The defendant Commercial Union Insurance Company is incorporated and has its principal place of business in the State of Massachusetts. The entity known as Aetna Life & Casualty no longer exists, and its successor is neither incorporated in nor has a principal place of business in West Virginia. The defendant Century Indemnity Company, successor to Insurance Company of North America, is incorporated and has its principal place of business in the State of Pennsylvania ... The defendant CIGNA Corporation is a Delaware corporation with a principal place of business in the State of Pennsylvania."

20. *Yost v. Travelers,* 181 F.3d 95, 1999 WL 409670 (4th Cir.1999).

21. *Yost,* 181 F.3d 95, *citing, Poling v. Motorists Mutual Ins. Co.,* 192 W.Va. 46, 450 S.E.2d 635 (1994).

duties of good faith and fair dealing by an insurance company are not delegable, and insurance companies are responsible for the actions of the attorneys they employ.[22]

Therefore, the Court concludes that the defendants have not met the heavy burden of establishing fraudulent joinder. Under the complete diversity rule and as there is shared common citizenship among several of the opposing parties, removal on the diversity issue must be denied.

## C. "RELATED TO" JURISDICTION

■ In relevant part, 28 U.S.C. § 1334(b) provides, "[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under title 11." Thus, a district court only has jurisdiction under § 1334(b) if the proceeding (1) arises under Title 11; (2) is a proceeding arising in a case under Title 11; or (3) is a proceeding related to a case under Title 11.[23] A proceeding is "related to" a bankruptcy proceeding if, "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy."[24] However, "related to" jurisdiction is not limitless.[25] Accordingly, "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankrupt-

cy estate does not bring the matter within the scope of section [1334(b) ]."[26]

Defendant Century Indemnity Company in its brief in opposition to remand asserts jurisdiction by this Court pursuant to 28 U.S.C. § 1452, alleging that this action is "related to" *In re Armstrong World Industries, Inc., et al.*, a Chapter 11 case pending in the District of Delaware bankruptcy court. *Armstrong* is an asbestos bankruptcy case. An affidavit from that case reads:

> AWI [Armstrong] does not find itself in chapter 11 because of operational difficulties, problems in its industry or an overleveraged balance sheet. Instead, like several companies that preceded AWI into chapter 11, AWI has been forced to seek chapter 11 protection because AWI's corporate history includes involvement with asbestos-containing insulation products and the manufacture of some asbestos-containing products. Consequently, AWI has commenced its chapter 11 case to ... finally resolve all claims, including asbestos claims, asserted against it.[27]

■ Defendants argue that this matter and the *Armstrong* bankruptcy case are related through plaintiffs' claims relating to prior AC and S settlements as well as the provisions of a confidential agreement

---

**22.** *Honaker v. Mahon*, 210 W.Va. 53, 552 S.E.2d 788, n. 8 (2001), *citing, Kohlstedt v. Farm Bureau Mutual Ins. Co.*, 258 Iowa 337, 139 N.W.2d 184, 185 (1965)("The duty of care on the insurer is to conduct good faith investigation of all aspects of the case ... This means its employees and agents, including doctors and lawyers, must act in good faith.")

**23.** *See, Loomis Electric, Inc. v. Lucerne Products, Inc.*, 225 B.R. 381, 385 (N.D.Ohio, 1998), *citing, In re Wolverine Radio Co.*, 930 F.2d 1132, 1141 (6th Cir.1991).

**24.** *Robinson v. Michigan Consolidated Gas Co.*, 918 F.2d 579, 583–584 (6th Cir.1990),

*citing, Pacor v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984).

**25.** *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995), *citing, Pacor* at 994.

**26.** *In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir.1996), *quoting, Pacor* at 994.

**27.** Affidavit of William C. Rodruan In Support Of First–Day Motions And Applications, Docket No. 6, *In re Armstrong World Indus. Inc.*, No. 00–4471(JJF) (Bankr.D. Del., filed December 5, 2000), at 6 (Tab A hereto).

between Century, Armstrong and a third party. Century claims that the confidential agreement resolves certain disputes concerning insurance coverage for asbestos-related bodily injury and requires Armstrong to provide Century with ongoing indemnification.

Pleadings filed by Armstrong indicate that Armstrong, Century and a third party, "entered into an Agreement of Compromise, Settlement, and Release ... pursuant to which the parties thereto compromised and settled all disputes and coverage issues with respect to asbestos-related bodily injury claims" asserted under certain insurance policies issued by Century's predecessor INA.[28] The pleading by Armstrong indicates that Century was to make payments to a trust designed to hold the funds for the benefit of Armstrong and the third party "for reimbursement of costs incurred by [Armstrong and the Third Party] in connection with Asbestos–Related Bodily Injury Claims (as such term is defined in the Settlement Agreement)." In the pleading, Armstrong further noted, "The only 'obligation' of [Armstrong] remaining under the Settlement Agreement is an ongoing contingent obligation to indemnify Century against Asbestos–Related Bodily Injury Claims that may be asserted directly against Century and that would have been covered under the Century Policies." While Century believes that it is entitled to indemnification from Armstrong of any liability that it may incur in this case as a result of plaintiffs' claims, there is no mention in the above for bad faith insurance claims.

■ When determining whether related to jurisdiction exists the Fourth Circuit Court of Appeals follows the *Pacor* test. The test reads:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.[29]

When discussing the *Pacor* test, the Supreme Court found:

> We agree with the views expressed by the Court of Appeals for the Third Circuit in [*Pacor*] that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate and that the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate. We also agree with that court's observation that a bankruptcy court's "related to" jurisdiction cannot by limitless."[30]

---

**28.** AWI's Response to Century Indemnity Company's Motion to Compel Assumption Of Agreement Of Compromise, Settlement, And Release, For Adequate Protection And For Other Relief, Docket No. 452, *In re Armstrong World Indus., Inc.*, No. 00–4471(JJF), filed Feb. 28, 2001, at 2.

**29.** *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th Cir.1986), *quoting, Pacor v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984), *see also, Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

**30.** *Celotex*, 514 U.S. at 308, 115 S.Ct. 1493.

■ The language of the Supreme Court sets out a broad definition for related to jurisdiction, but, such jurisdiction is still limited. The Court in *Pacor* said:

On the other hand, the mere fact that there may by common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of Section 1471(b).[31] Judicial economy itself does not justify federal jurisdiction. *See generally Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). "Jurisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist." *In re Haug,* 19 Bankr. 223, 224–25 (Bkrtcy. D.Or.1982). *See also In re McConaghy,* 15 Bankr. 480, 481 (Bkrtcy.E.D.Va.1981) (Bankruptcy court lacks jurisdiction to decide disputes in which the estate of the debtor has no interest.)[32]

*Pacor* involved a married couple, the Higgins', who brought a products liability action against Pacor in state court. Pacor impleaded Johns–Manville Company as the alleged manufacturer of the asbestos products distributed by Pacor. Following Johns–Manville's filing for bankruptcy, Pacor removed both the Higgins/Pacor and Pacor/Johns–Manville third party claims. The matter was then remanded by the district court back to the state court. After Pacor appealed, the Third Circuit affirmed the remand, finding that the Higgins/Pacor action was not related to the Johns–Manville bankruptcy and stating that, "[a]t best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville."[33]

The Fourth Circuit Court of Appeals has found jurisdiction related to bankruptcy under the usual circumstances where "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."[34] Based on this premise, the Fourth Circuit in *A.H. Robins* determined that actions against the bankrupt company's officers or employees were entitled to indemnification under the bankrupt employer's products liability insurance policy, corporate bylaws and the governing corporate statute, all being related to the bankruptcy proceeding.[35] Importantly, the officers and employees were being sued as a result of actions they had done while acting on behalf of the bankrupt company and were directly related to the bankruptcy.

However, the Seventh Circuit has stated that, "common sense cautions against an open-ended interpretation of the 'related to' statutory language 'in a universe where everything is related to everything else.'"[36] The plaintiffs submit that Century has sought such an "open-ended" interpretation of related to jurisdiction when removing this matter to the district court.

■ As previously established, the Fourth Circuit has consistently followed

---

**31.** 28 U.S.C. § 1471(b) was recodified in identical form as current § 1334(b).

**32.** *Pacor,* 743 F.2d at 994.

**33.** *Pacor,* 743 F.2d at 995.

**34.** *A.H. Robins v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986).

**35.** *A.H. Robins,* 788 F.2d at 1001–02, 1007.

**36.** *Matter of FedPak Systems, Inc.,* 80 F.3d 207, 214 (7th Cir.1996), *quoting* g. Dunne, *The Bottomless Pit of Bankruptcy Jurisdiction,* 112 Banking L.J. 957 (Nov Dec.1995).

the *Pacor* test. Furthermore, many other circuits around the country subscribe to the *Pacor* test rationale.[37] These courts have also found that potential future claims for indemnity and contribution do not relate to title 11. The Fifth Circuit, in *In re Zale Corp.* found no related to jurisdiction over claims between non-debtors, stating:

> We begin our analysis by noting that a large majority of cases reject the notion that bankruptcy courts have "related to" jurisdiction over third-party actions. Those cases in which courts have upheld "related to" jurisdiction over third-party actions do so because the subject of the third-party dispute is property of the estate, or because the dispute over the asset would have an effect on the estate. Conversely, courts have held that a third-party action does not create "related to" jurisdiction when the asset in question is not property of the estate and the dispute has no effect on the estate. Shared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action "related

to" the bankruptcy. Moreover, judicial economy alone cannot justify a court's finding jurisdiction over on otherwise unrelated suit.[38]

In the *Zale* case, CIGNA Insurance had issued a directors and officers policy for Zale's executives. In the Zale bankruptcy, CIGNA and Zale entered into a settlement agreement. This agreement included a provision under which Zale agreed to indemnify CIGNA for bad faith or other claims against CIGNA.

National Union Fire Insurance Company had an excess policy with Zale. Alan Field was a former Zale director not covered by the settlement agreement with CIGNA. Both were pursuing bad faith and breach of contract claims against CIGNA.

CIGNA argued that the bad faith claims would effect the estate because Zale agreed to indemnify CIGNA for any such claims. Although indemnification has brought otherwise unrelated actions within the scope of a bankruptcy court's jurisdiction in other cases,[39] the claims at issue in

---

**37.** *See, In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir.1996); *In re Walker*, 51 F.3d 562 (5th Cir.1995); *Luevano v. Dow Corning Corp.*, 183 B.R. 751 (W.D.Tex.1995).

**38.** *In re Zale*, 62 F.3d 746, 753 (5th Cir.1995)(footnotes omitted); *see In re Walker*, 51 F.3d 562, 569 (5th Cir.1995)("As several courts have observed, 'a vast majority of cases find that 'related to' jurisdiction is lacking in connection with third-party complaints.' "); *Homsy v. Floyd (In re Vitek)*, 51 F.3d 530, 538 n. 39 (5th Cir.1995)(wondering "out loud" about the extent, if any, to which the tools of injunctive relief and settlement (or compromise) are appropriate ... in dealing with the rights of third party creditors of the bankruptcy and stating that "the broad latitude afforded bankruptcy courts in fashioning remedies should not be used in a way that tramples on the rights of dissenters among creditors or non-parties to the proceedings."); *In re Fitzgeralds Gaming Corp.*, 261 B.R. 1, 7 (Bankr.

W.D.Mo.2001); *TIG Insurance Co. v. Smolker*, 264 B.R. 661, 666 (Bankr.S.D.Cal.2001); *Southern Company Energy Marketing LP v. Virginia Electric and Power Co.*, 190 F.R.D. 182, 190 n. 18 (E.D.Va.1999).

**39.** *See In re Wood*, 825 F.2d 90, 94 (5th Cir.1987)(holding that claim against third party was related to bankruptcy because any liability would be shared by estate and third party); *see also In re G.S.F.*, 938 F.2d 1467, 1476 (1st Cir.1991)(holding that bankruptcy court had jurisdiction over third-party action because creditor who was defendant in third-party action would have substantial contribution claim against debtor if creditor lost); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1143 (6th Cir.1991)(holding that third-party action related to bankruptcy because debtor had agreed pursuant to reorganization plan to indemnify creditor, and distinguishing cases where third-party claimant had no indemnification agreement, and where claimant was

those cases involved the debtor's behavior, thereby providing a basis for the debtor's obligation that was independent of the indemnification agreement. In those cases, the purpose of the indemnification agreement was to eliminate the necessity for a formal suit against the debtor; therefore, the indemnification agreement satisfied a procedural goal, not a substantive one.

The Fifth Circuit held that because the property at issue, the bad faith claims, was not the property of the estate, the bankruptcy court would have no jurisdiction over the tort claims absent the indemnification agreement. Upon looking past the indemnification agreement, the Fifth Circuit found no substantive basis for indemnification to exist. Therefore, there was no bankruptcy jurisdiction over the bad faith claims. This clearly appears to be the situation faced before the Court in the present case. Therefore, the Court concludes that related to jurisdiction is lacking and that this action must be remanded to the Circuit Court of Berkeley County, West Virginia.

There has also been a growing reluctance of federal courts to expand its related to jurisdiction of bankruptcy court proceedings.[40] In *Arnold v. Garlock*, 278 F.3d 426 (5th Cir.2001), the Fifth Circuit refused to transfer to the U.S. Bankruptcy Court for the District of Delaware numerous Texas asbestos cases. The Court held that the defendant's claim of contribution against the Federal–Mogul group bankruptcy pending in Delaware was not "related to" and affirmed remand to Texas state courts.

Judge Haden, Chief Judge of the Southern District of West Virginia, *In re Asbestos Litigation*, concluded that subject matter jurisdiction over that action, brought in the state Circuit Court of Kanawha County, was lacking. Significantly, Judge Haden addressed potential indemnity claims of one automaker defendant against a debtor in bankruptcy, finding such potential claims inadequate to support subject matter jurisdiction. Judge Haden stated:

> Using this wide broom, the automakers would sweep every friction products claim to the Delaware court, including Plaintiffs' completely non-derivative claims that the automakers are subject to independent liability for failure to warn of the dangers of their products, whether or not those claims involve a Federal–Mogul product.[41]

Judge Haden's decision also noted the equitable remand considerations pursuant to 28 U.S.C. § 1452(b). Many of the considerations he cited also appear here:

> [W]hether remand would prevent duplication or uneconomical use of judicial resources; the effect of the remand on the administration of the bankruptcy estate; whether the case involves questions of state law better addressed by a state court; comity; judicial economy; prejudices to involuntarily removed parties; the effect of bifurcating the action,

not a creditor) *cert. dismissed*, 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992); *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 583–84 (6th Cir.1990)(holding that suit against trustee was related to bankruptcy because if suit was successful, trustee would require reimbursement from the estate.)

**40.** *See, Adams v. General Motors Corp.*, No. 01–794–GPM (S.D.Ill., Jan. 29, 2002); *Consolidated Plaintiffs v. Honeywell International, Inc.*, Nos. 4:01–CV–2030 through 2044

(U.S.D.C.E.D.MO.); *Skylark v. Honeywell International, Inc.*, No. 01–5069–CIV (S.D.Fla., Jan. 25, 2002); *McDowell V. Honeywell International, Inc.*, No. G–01–897 (S.D.Tex., Jan. 23, 2002); *Kwasnik v. AC and S, Inc., et al.*, No. EP–01–CA–379 DB (W.D. Tex., Jan. 14, 2002).

**41.** *In re Asbestos Litigation*, C.A. No. 2:01–1055 to 2:01–1974, 2:01–1085–2:01–1224 (4th Cir.2001).

including whether remand will increase or decrease possibility of inconsistent results; the predominance of state law issues and non-debtor parties; and the expertise of the court in which the action originated.[42]

Judge Haden also noted that:

A mechanism is already in place to try these action in state court, including the Mass Litigation Panel and Procedure, implemented by the Supreme Court of Appeals of West Virginia. *See* West Virginia Trial Court Rule 26.01 ... [T]he mass litigation procedure has been employed in the West Virginia courts on past occasion. Both the plaintiffs' bar and defense counsel involved in these actions are conversant with the process and procedures. As noted, that process was underway with regard to the 160 actions removed here. This Court believes federal courts ought not to intrude on state court proceedings, except where law and equity require it. The limited jurisdiction of Article III courts supports this view, as does the general removal rule: where federal jurisdiction is doubtful, remand is necessary. *Mulcahey*, 29 F.3d at 151. This court has no reason to doubt or question the capacity of the West Virginia court system to handle these actions.[43]

### III. Conclusion

The Court concludes that defendants have not carried their burden concerning fraudulent joinder as a basis for removal jurisdiction. Therefore, based upon the complete diversity rule, the plaintiffs mo-

tion for remand will be granted pursuant to 28 U.S.C. § 1447(c).

Additionally, the Court concludes that there is not a basis for bankruptcy court related to jurisdiction in reference to 28 U.S.C. § 1334(b). In the alternative, the Court concludes that equitable remand considerations pursuant to 28 U.S.C. § 1452(b) also weigh in the plaintiffs favor.

The Court, therefore, **ORDERS,** that:

1. That the plaintiffs motion for remand or abstention (Doc. # 8 and # 12) is GRANTED;

2. That defendant Century Indemnity Company's motion for transfer is DENIED as moot; and

3. That the Court Clerk shall forward a copy of this Memorandum Opinion and Order to the Circuit Court of Berkeley County, West Virginia along with a copy of the pleadings and files herein for all future proceedings.

The Clerk is directed to transmit true copies of this order to all counsel of record herein.

**42.** *In re Asbestos Litigation,* C.A. No. 2:01–1055–2:01–1074, 2:01–1085–2:01–1224 (4th Cir.2001), *citing,* 16 James Wm. Moore et al., Moore's Federal Practice § 107.15[8][e] (3d ed.2001)

**43.** *In re Asbestos Litigation,* C.A. No. 2:01–1055–2:01–1074, 2:01–1085–2:01–1224 (4th Cir.2001).