**Karen A. GRENNELL,
et al., Plaintiffs,**

v.

**WESTERN SOUTHERN LIFE
INSURANCE COMPANY,
et al., Defendants.**

Nos. CIV.A. 3:03–833 to
CIV.A. 3:03–2019.

United States District Court,
S.D. West Virginia,
Huntington Division.

Jan. 6, 2004.

Matthew L. Clark, Bradley H. Layne, Kayser, Layne & Clark, Point Pleasant, WV, Jay Aughtman, Beasley, Allen, Crow, Methvin, Portis & Miles, Montgomery, AL, for Plaintiffs.

Thomas R. Goodwin, Carrie Goodwin Fenwick, Goodwin & Goodwin, William J. Cooper, Erica M. Baumgras, Michelle L. Marinacci, Flaherty, Sensabaugh & Bonas-

so, Charleston, WV, Joseph R. Miller, Kimberly Weber Herlihy, F. James Foley, Vorys, Sater, Seymour & Pease, Columbus, OH, Harry M. Rubenstein, David M. Thomas, Kay, Casto & Chaney, Morgantown, WV, for Defendants.

## ORDER

CHAMBERS, District Judge.

Pending is Plaintiffs' Motion to Remand. For the reasons stated herein, the motion is **DENIED**.

### I. Factual Background

On June 3, 2003, 2,286 plaintiffs filed suit in the Circuit Court of Mason County, West Virginia, against the Western and Southern Life Insurance Company ("Western–Southern") and seven individuals who were allegedly agents of Western–Southern (the "individual defendants"). Western–Southern is an Ohio corporation with its principal place of business in Cincinnati, Ohio. The individual defendants are all residents of West Virginia. The plaintiffs are residents of several states, including West Virginia and Ohio. The single complaint filed by the plaintiffs alleged that both Western–Southern and the individual defendants committed various forms of fraud against them in the sales of certain "vanishing premium" life insurance policies.[1]

Though only one complaint was filed, the Clerk of Court of the Mason County Circuit Court, acting pursuant to a recent administrative order of that court's chief judge, required each "family unit plaintiff" to pay a separate filing fee and assigned each a case number.[2] Although the Clerk was required to assign multiple case numbers and charge multiple "supplemental filing fees," the plaintiffs were not required to file multiple complaints, and the entire action was apparently assigned to one judge of the Circuit Court. According to the Mason County Circuit Court Clerk, multiple case numbers were assigned "for purposes of assessing and tracking the filing fees ... and for tracking documents that may apply to individual Plaintiffs' [sic]."

On July 29, 2003, Defendants filed four notices of removal purporting to remove 1,317 of the Circuit Court actions to the United States District Court for the Southern District of West Virginia. The Clerk of this Court assigned each plaintiff's case a case number and required Defendants to tender 1,317 filing fees. Relying on the representations contained in the removal notices and in consultation with the active judges of this district,[3] the Honorable Chief Judge David A. Faber directed the Clerk to divide the cases into four groups. The groups, based on classifications suggested by Defendants, separated Plaintiffs into four categories: plaintiffs who are West Virginia residents who had some contact with the individual defendants; plaintiffs who are West Virginia residents who had no contact with the individual defendants; plaintiffs who are currently in Chapter 11 bankruptcy proceedings or res-

1. A class-action lawsuit concerning Western–Southern's vanishing premium policies was previously filed in the Court of Common Pleas for Erie County, Ohio. The Mason County plaintiffs are all putative class members who "opted out" of that suit.

2. Under the provisions of the administrative order, a "family unit plaintiff" was defined as "individuals living together as a family unit or an individual entitled to take from the estate

of a decedent under the laws of the State of West Virginia, which estate is named as a plaintiff in the litigation." Based on this definition, 1,891 case numbers were assigned and 1,891 filing fees were charged.

3. The Honorable Judge Joseph R. Goodwin has recused himself from the cases arising from this litigation.

idents of Ohio; and plaintiffs who are residents of states other than West Virginia or Ohio.[4] Each of the first three groups was assigned to a single judge and a "lead plaintiff" by whose name the group would be known was designated for each of the four groups. The final group (the "*Grennell* cases"), containing more than 1,100 cases, was divided among the four active, non-recused judges of this district. For purposes of signing proposed orders and deciding the instant motion, the Honorable Judge Robert C. Chambers was designated as the "lead judge" of the *Grennell* group.

Through the instant motion, Plaintiffs seek to have the *Grennell* cases remanded to Mason County Circuit Court. They argue that this Court improperly severed their claims, and that in fact all 1,317 plaintiffs now in federal court should be treated as properly joined in one action. Defendants, however, contend that both the Circuit Court and this Court have treated Plaintiffs' claims as separate cases and that absent a successful motion for joinder or consolidation, a change in the Court's attitude towards the cases would be improper. Plaintiffs and Defendants also disagree as to whether the individual defendants are properly joined as parties.

## II. Analysis

Plaintiffs urge this Court to examine the status of this litigation as it existed in Mason County Circuit Court and to determine that despite certain administrative actions taken by that court, there existed only one case before Defendants filed their notices of removal and the cases were administratively severed in federal court. According to Plaintiffs, if the Mason Coun-

ty litigation was truly one case, then removal was improper; no one disputes that some plaintiffs and the individual defendants are residents of West Virginia, thus depriving the Court of diversity jurisdiction. That suggestion, however, does not end the Court's inquiry. If as Defendants posit and as explained more fully below Plaintiffs were fraudulently joined in state court, then a finding that the litigation was only a single case will not defeat the diversity jurisdiction of this Court and thus cannot be the basis for remand. Plaintiffs also point out that even if their claims were wrongly joined, the presence of West Virginia resident defendants in the case forbids removal. Therefore, this Court's decision will consist of three parts: an examination of the relevant standards for ruling on a motion to remand; an analysis of whether joinder of Plaintiffs' claims would be proper; and an analysis of whether joinder of all Defendants would be proper.

## A. Rules of Removal and Standard for Reviewing a Motion to Remand

When a civil case over which a federal district court would have original jurisdiction is filed in state court, the defendants may remove that action to the United States District Court in the district and division that embraces the place where the action is pending. 28 U.S.C. § 1441(a). In a case such as this one, where the district court's original jurisdiction is premised on diversity of citizenship, an action is not removable where one or more of the defendants is a resident of the state in which the suit was filed. 28 U.S.C. § 1441(b). Further, the "complete diversity" rule gives federal courts diversi-

---

4. As discussed in greater detail below, Plaintiffs' Complaint does not specifically allege which Plaintiffs had contacts with which individual defendants. Thus, the classification system employed by this Court has been based entirely upon allegations made by Defendants in their notices of removal.

ty jurisdiction only where no party shares common citizenship with any party on the other side. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The "fraudulent joinder" doctrine, however, "permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir.1999).

While the typical fraudulent joinder[5] claim seeks the dismissal of nondiverse or resident defendants, Defendants in this action contend that in filing only one action, Plaintiffs were fraudulently joined in the Mason County Circuit Court action. Defendants make this claim because they cannot demonstrate complete diversity of parties merely by showing that the individual defendants are fraudulently joined, as Defendant Western–Southern is an Ohio corporation and Plaintiffs include Ohio residents.[6] In order to succeed in resisting remand, then, Defendants must demonstrate 1) that Plaintiffs were either never joined or fraudulently joined; and 2) that the individual defendants have been fraudulently joined.

▆▆▆▆ Removal statutes must be strictly construed against removal. *See, e.g., Mulcahey v. Columbia Organic Chem. Co.,* 29 F.3d 148, 151 (4th Cir.1994) ("Because removal jurisdiction raises significant fed-

eralism concerns, we must strictly construe removal jurisdiction."); *Baisden v. Bayer Corp.,* 275 F.Supp.2d 759, 761 (S.D.W.Va.2003). The party seeking removal bears the burden of demonstrating jurisdiction. *Sonoco Prods. Co. v. Physicians Health Plan, Inc.,* 338 F.3d 366, 370 (4th Cir.2003). Where, as here, the removing party relies on a claim of fraudulent joinder to establish federal jurisdiction, the burden is particularly heavy. In meeting its burden with respect to demonstrating fraudulent joinder of defendants, the diverse "defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232–33 (4th Cir. 1993).[7] The defendant must show not just that the claim will not succeed, but that no possibility of a right to relief has been asserted. *Id.* at 233. The Fourth Circuit has held that "this standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir. 1999); *see also Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 852 (3d Cir.1992) ("[W]hile we will not apply a Rule 12(b)(6) standard in examining [the plaintiff's claims], we will examine the complaint and the district court's opinion to determine whether they could support a conclusion

---

**5.** The phrase "fraudulent joinder" is something of a misnomer. It is "a term of art; it does not reflect on the integrity of Plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse Defendant, or *in fact* no cause of action exists." *AIDS Counseling & Testing Ctrs. v. Group W. Television, Inc.,* 903 F.2d 1000, 1003 (4th Cir.1990) (emphasis in original).

**6.** Therefore, if Plaintiffs are correct that the Mason County litigation was one case and all

Plaintiffs were properly joined, some Plaintiffs would be of the same citizenship as a Defendant–Western–Southern–about whose proper presence in the action there is no dispute.

**7.** Alternatively, removal jurisdiction could be demonstrated by a showing "that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Marshall,* 6 F.3d at 233. Defendants have made no such allegation in this case, however.

that the claims ... were not even color-able, *i.e.*, were wholly insubstantial and frivolous."). In determining whether join-der is fraudulent, a court is "not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *AIDS Counseling & Testing Ctrs.*, 903 F.2d at 1004.

## B. Fraudulent Joinder of Plaintiffs

■ Defendants argue that "there has been no joinder or consolidation here." The Court is not swayed by this assertion. As noted, the Mason County plaintiffs filed only one complaint to initiate litigation that included over 2,200 individuals. Defen-dants are correct that the cases were nev-er formally consolidated. Therefore, if Plaintiffs were not joined in one action, the Circuit Court would have required them to file a separate complaint on behalf of each plaintiff. Defendants also point out that Plaintiffs were required to pay multiple filing fees. As discussed, however, the Mason County Circuit Court Clerk charac-terizes these as "supplemental filing fees." This description of the fees supports Plain-tiffs' argument that the litigation involved something other than 1,891 separate origi-nal actions. Defendants also note that no motion for joinder was made in the Circuit Court action. Under both West Virginia and federal procedural rules, however, no such motion is required where, as in this case, multiple parties are joined at the time of the filing of a complaint. *See Rosmer v. Pfizer, Inc.*, 272 F.3d 243, 246 (4th Cir.2001) ("Indeed, a plaintiff will usu-ally join all Rule 20 defendants in the initial complaint rather than waiting to do so later."). Furthermore, *this* Court's treatment of the lawsuits (including as-signing multiple case numbers and requir-ing Defendants to pay multiple filing fees) has no bearing on the nature of the case as it existed in Circuit Court. The Court therefore finds that Defendants have not met their burden of demonstrating that the Mason County Circuit Court litigation involved non-joined plaintiffs.

■ In a footnote to their memorandum opposing remand, Defendants argue that even if Plaintiffs were joined in state court, they "may not avoid diversity jurisdiction by misjoining their claims."[8] Although the Fourth Circuit has not addressed the issue, at least one court within this Circuit has applied the fraudulent joinder doctrine to nondiverse plaintiffs. *See Wise v. Trav-elers Indemnity Co.*, 192 F.Supp.2d 506, 511–13 (N.D.W.Va.2002) (finding that plaintiffs were not fraudulently joined). Several other courts have held that fraud-ulent joinder of plaintiffs is no more an impediment to diversity jurisdiction than fraudulent joinder of defendants. *See, e.g., In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir.2002); *Cal. Dump Truck Assn. v. Cummins Engine Co.*, 24 Fed. Appx. 727, 729 (9th Cir.2001) (assuming without deciding that the fraudulent join-der doctrine applies to plaintiffs as well as defendants); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir.1996); *Ferry v. Bekum Am. Corp.*, 185 F.Supp.2d 1285, 1291 (M.D.Fla.2002); *In re Rezulin Prods. Liab. Litig.*, 168 F.Supp.2d 136,

---

**8.** Both parties have "put all their eggs in one basket," so to speak. Plaintiffs argue that because Defendants have not fully briefed the issue of misjoinder of plaintiffs, "the Court is only left with accepting the fact joinder of the claims of each of the Plaintiffs was proper under West Virginia law." Defendants, in turn, insist that the plaintiffs have never been joined, rendering a misjoinder argument su-perfluous. The Court disagrees with both sides. While Plaintiffs' claims were, in fact, probably joined in Mason County Circuit Court, this Court will not grant remand based on the erroneous legal conclusion that such joinder was proper.

147–49 (S.D.N.Y.2001). No federal court has determined that the fraudulent joinder doctrine is not as applicable to plaintiffs as it is to defendants. The Court can see no logic in prohibiting plaintiffs from defeating diversity jurisdiction by fraudulently joining nondiverse defendants, but allowing them to do so through fraudulently joining nondiverse plaintiffs. Therefore, this Court will adopt the reasoning of those courts that have addressed the question, and hold that the fraudulent joinder doctrine applies both to plaintiffs and defendants.

■ Although the court in *Wise, supra,* applied the fraudulent joinder doctrine to nondiverse plaintiffs, it did not articulate a standard for doing so (perhaps because in that case, it was fairly clear that joinder was proper). Because no precedent has emerged in this Circuit, the Court must look to other federal courts to develop a standard for analyzing fraudulent joinder claims as they pertain to plaintiffs. The Fifth and Eleventh Circuits have taken the following approach:

> [M]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. However, mere misjoinder is insufficient to raise to the level of fraudulent misjoinder. To constitute fraudulent misjoinder, the misjoinder must represent totally unsupported, or "egregious" misjoinder.

*Coleman v. Conseco, Inc.,* 238 F.Supp.2d 804, 814 (S.D.Miss.2002) (citations omitted). Under this standard, nondiverse plaintiffs are found fraudulently joined only where two conditions are satisfied: joinder would not be permissible under the applicable rules of civil procedure, and "collusive joinder to defeat the diversity jurisdiction of the federal courts must also be present." *Id.* at 817. This "egregiousness" standard, however, has not been universally accepted in the federal courts. One court, for instance, has held that this heightened standard is inappropriate, and that when faced with removed, nondiverse, misjoined plaintiffs, the proper course of action for a district court is to sever the claims of the nondiverse plaintiffs so as to protect the right of the removing defendant to litigate in a federal forum:

> Arguably a plaintiff's right to choose among defendants and claims—the principal reason for imposing a strict standard of fraudulent joinder to effect removal—is not compromised where claims of co-plaintiffs are severed or dismissed. This is not to say the cost and efficiency benefits to joined plaintiffs are immaterial; they simply do not carry the same weight when balanced against the defendant's right to removal. While aware that several courts have applied [the] egregiousness standard when considering misjoinder of plaintiffs in the context of remand petitions, this Court respectfully takes another path.

*In re Rezulin Prods. Liab. Litig.,* 168 F.Supp.2d 136, 147–48 (S.D.N.Y.2001). This Court finds the reasoning employed in *Rezulin* to be compelling. One of the primary reasons for requiring defendants to carry a heavy burden when considering an allegation that nondiverse or resident defendants have been fraudulently joined is the protection of the right of the plaintiff to choose the course and forum for his or her claim. Further, when a court holds that a defendant has been fraudulently joined, its only course of action is to dismiss the defendant from the case, thus potentially extinguishing (and certainly complicating) a plaintiff's opportunity to recover from the now-absent party. Upon a finding that nondiverse plaintiffs have been fraudulently joined, however, the court may sever the claims of the nondiverse plaintiffs and remand them to state

court. Thus, a plaintiff's ability to recover when a court denies a motion to remand based on fraudulent joinder of plaintiffs is much less at risk than when the court takes the same action because of fraudulent joinder of defendants. The Court therefore adopts the holding of the *Rezulin* court and will deny Plaintiffs' motion to remand if joinder of Plaintiffs' claims is improper.

■ West Virginia rules regarding permissive joinder are substantially similar to their federal counterparts. *See Anderson v. McDonald,* 170 W.Va. 56, 289 S.E.2d 729, 733 (1982) (relying on federal case law in interpreting Rule 20). Therefore, this Court need not decide whether to apply federal or state law regarding permissive joinder, as the two are identical in West Virginia.[9] Under Federal Rule of Civil Procedure 20(a),

> [M]isjoinder is present, and severance appropriate, when the claims asserted by or against the joined parties do not arise out of the same transaction or occurrence or do not present some common question of law or fact. Rule 20(a) permits the broadest possible scope of action consistent with fairness to the parties [and] joinder of claims, parties and remedies is strongly encouraged.... [T]he transaction and common question requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.

*Jonas v. Conrath,* 149 F.R.D. 520, 523 (S.D.W.Va.1993) (citations omitted); *see also Saval v. BL, Ltd.,* 710 F.2d 1027, 1031 (4th Cir.1983) ("Further, the rule should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."). Joinder under the rule is only appropriate when both specific requisites are met: the claims must arise out of the same transaction, series of transactions, or occurrence, and some question of law or fact common to all parties must be present. Wright, Miller, & Kane, 7 *Federal Practice & Procedure* § 1653.

■ In this case, Plaintiffs allege that Defendants committed fraud over the course of over 1,800 separate sales transactions of insurance policies. The crux of Plaintiffs' claims can be found at paragraph four of the complaint filed in the Circuit Court:

> In order to induce Plaintiffs to purchase the Western Southern life insurance policies, Defendants often prepared computer generated policy illustrations through the use of computer software and programs that had been designed, implemented, or approved by Western Southern. *However, Defendants controlled and specified the individualized information that was used to prepare the illustrations for Plaintiffs.* These illustrations *often* showed that the annual premiums due on the policies vanished after a limited number of years and that the cash premium payment due on the policies vanished after a limited number of years. Moreover, *some* sales presentations concerning the vanishing premium concept occurred even when

---

9. The *Coleman* court concluded that under the *Erie* doctrine, federal procedural law must be the appropriate reference. However, fraudulent joinder analyses seek resolution of whether a plaintiff's claim could prevail as it was filed in the state court from which it was removed. Thus, examinations of joinder of parties should probably proceed with reference to state procedural law. *See In re Diet Drugs Prods. Liab. Litig.,* 294 F.Supp.2d 667, at 678, 2003 U.S. Dist. LEXIS 15479, at *32 (E.D.Pa. July 30, 2003) (holding that proper inquiry is whether state procedural law would permit joinder); *Conk v. Richards & O'Neil, LLP,* 77 F.Supp.2d 956, 971 (S.D.Ind.1999) (same).

more formal illustrations were not provided to the Plaintiffs. The defendants often induced Plaintiffs to replace existing policies in favor of interest sensitive Western Southern policies.

(emphasis added). Thus, Plaintiffs all purchased the same basic product, a "vanishing premium" life insurance policy from Western–Southern. According to Plaintiffs, Western–Southern designed computer software for use by the individual defendants in their sales presentations. However, the individual defendants controlled the output of these programs (the "illustrations" referred to in the complaint) by inputting each plaintiff's specific information. Thus, each purchase was induced by a different misrepresentation. That Plaintiffs were fraudulently induced to purchase the same thing does not satisfy the requirements of Rule 20(a). *See, e.g., Insolia v. Philip Morris, Inc.,* 186 F.R.D. 547, 549 (W.D.Wis.1999) ("The general consensus ... is that Rule 20 demands more than the bare allegation that all plaintiffs are victims of a fraudulent scheme perpetrated by one or more defendants; there must be some indication that each plaintiff has been induced to act by the same misrepresentation."); *Papagiannis v. Pontikis,* 108 F.R.D. 177, 179 n. 4 (N.D.Ill.1985) (analogizing claims of two plaintiffs separately fraudulently induced to purchase oil wells to the equally separate plights of "two persons who fall, wholly independently, for the classic 'pigeon drop' swindle two weeks apart").

Had Plaintiffs all purchased their policies directly from Western–Southern or relied in some way on the same misrepresentation (if, for instance, Plaintiffs alleged that Western–Southern had produced a prospectus upon which each of them relied), joinder would perhaps be proper. In *Snodgrass v. Ford Motor Co.,* 2002 WL 485688 (D.N.J. March 28, 2002), for instance, the court permitted several plaintiffs to join their claims against Ford that arose from a faulty ignition switch, even though the plaintiffs had purchased different model cars from different dealers in different years. The court summarized,

> In the instant matter, defendant Ford manufactured all vehicles with the same ignition switch, produced by defendant UTA, issued the same warranties, and in most cases, made the same representations to plaintiffs regarding the defective condition of their vehicles, specifically denying the existence of a problem with the Fox ignition switch in some cases.... [T]he actions of Ford, in manufacturing of its product and in post-sale communications with plaintiffs, are very likely a central issue to all of plaintiffs' claims, most of which involve breach of warranty and fraud.

*Snodgrass,* 2002 WL 485688, at *2. The *Grennell* plaintiffs, however, do not allege common misrepresentations made directly by Western–Southern. Instead, they claim that they were separately induced by individual insurance agents to purchase the product. Even though similar (perhaps identical) policies were involved, each plaintiff will need to specifically prove reliance on a misrepresentation made by separate insurance agents.

In addition to being unable to demonstrate that their claims satisfy the "transaction or occurrence" test, Plaintiffs are also unable to show a question of law or fact that is common to all their claims. As one court has noted,

> Common issues of law does not mean common issues of an area of the law. For example, while two or more persons could sue a common defendant for Title VII discrimination, based upon the same policies or conduct, all plaintiffs could not join together in one large lawsuit, to sue all defendants for Title VII discrimi-

nation, just because all their claims involve Title VII discrimination.

*Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 640 (D.Nev.2001). The plaintiffs within the *Grennell* group are similar to the hypothetical Title VII plaintiffs described in *Graziose*. Though they have a claim arising under the same area of law against a common defendant, the facts that form the bases for those claims are unique to each plaintiff. In the absence of allegations that Plaintiffs were misled by the same misrepresentation, joinder of Plaintiffs fraud claims is not permitted under Rule 20(a). *See also Minasian v. Standard Chartered Bank*, 1994 WL 395178 (N.D.Ill. July 24, 1994) (joinder not proper where plaintiffs would proceed on same legal theory against common defendant); *McLernon v. Source Int'l, Inc.*, 701 F.Supp. 1422, 1426 (E.D.Wis.1988) (where plaintiffs alleged that some of them relied on oral misrepresentations not made to others of them and failed to allege that "all were duped by a common misrepresentation," plaintiffs failed to demonstrate that joinder was proper); *Sun–X Glass Tinting, Inc. v. Sun–X Int'l, Inc.*, 227 F.Supp. 365 (W.D.Wis.1964) (where eight plaintiffs were separately induced by allegedly fraudulent misrepresentations, joinder was not permissive).

In a case strikingly similar to the one presented here, the court in *Coleman, supra*, concluded that joinder was inappropriate:

> The first test is whether Plaintiffs' losses were based on the same series of transactions or occurrences. They were not. Each plaintiff purchased a separate ... policy of insurance ... and the policies were purchased at different times, from different agents, at different locations. The second test is whether Plaintiffs' claims were based on common questions of law, or common questions of fact. Again, they were not. The applicable law for each claim will be the law of the state in which each plaintiff entered into their respective contracts of insurance. The facts will also vary as to each Plaintiff because the sale of the [vanishing premium policies] occurred at different times and over a geographic area spanning fifteen states.

*Coleman*, 238 F.Supp.2d at 819. As in *Coleman*, this litigation involves more than 1,800 insurance policies, purchased at different times, in different places, and from different agents. Plaintiffs allege no connection between themselves other than that they were all victims of the fraudulent acts of Defendant Western–Southern. That the various plaintiffs' claims might only be resolved by resort to the laws of the various states in which they reside only enhances the Court's conclusion that they have been fraudulently joined.[10] In this case, the requirements of Rule 20(a) clearly are not met. Therefore, the Court finds that while the Mason County Circuit Court litigation may have existed as one case before its removal, the administrative severance of Plaintiffs' claims by Chief Judge Faber and the Clerk of Court was entirely proper. Typically, the proper remedy for misjoinder of plaintiffs would be severance of all claims and remand of the nondiverse plaintiffs' claims.[11] This

---

**10.** The Court further finds that even were it to adopt the "egregiousness" standard of fraudulent joinder, its conclusion would be no different. Of the 1,891 separate claims, well over half-more than 1,100–involve nondiverse plaintiffs. Given that such a large proportion of the plaintiffs have no discernible connection to the forum state, their joinder was more likely than not solely due to Plaintiffs' desire to defeat diversity jurisdiction.

**11.** While the *Coleman* court dismissed the nondiverse plaintiffs, this Court finds that action unnecessarily harsh. When a court finds

Court, however, is currently responsible only for the *Grennell* cases, all of which involve residents of states other than West Virginia or Ohio. Therefore, the Court need not take any action regarding remand of nondiverse plaintiffs, as their cases are before other judges of this district.

## C. Fraudulent Joinder of Defendants

Having found that Plaintiffs were misjoined in state court, the conclusion that Defendants are fraudulently joined is readily apparent. Defendants have submitted compelling and unrebutted evidence that none of the *Grennell* plaintiffs had contact with any of the individual defendants. Even in the absence of such evidence, Plaintiffs' allegations fail to satisfy the particularity requirements of West Virginia Rule of Civil Procedure 9(b). *See, e.g., Croston v. Emax Oil Co.*, 195 W.Va. 86, 464 S.E.2d 728, 733 (1995); *Hager v. Exxon Corp.*, 161 W.Va. 278, 241 S.E.2d 920, 923 (1978).

A brief examination of the claims of any of the *Grennell* plaintiffs demonstrates the fraudulent joinder present in this case. Karen Grennell, for instance, is apparently a resident of a state other than Ohio or West Virginia. According to the allegations of the complaint as it must be read once Plaintiffs' claims have been severed, seven Western–Southern agents committed fraud against her in the sale of a single insurance policy. The complaint does not allege any specific contact between Ms. Grennell and the named defendants. Defendants have submitted an affidavit-the

veracity of which Plaintiffs have not contested-that asserts that neither Ms. Grennell nor any of the other 1,186 plaintiffs in the *Grennell* group were sold their policies by the seven individual defendants. The Court therefore concludes that no possibility of a right to relief against the resident defendants has been asserted by any of the plaintiffs in the *Grennell* group. Therefore, the Court will dismiss the claims against all of these defendants. The Court declines, however, to make any judgment about Defendants' remaining arguments concerning whether West Virginia law would permit individual liability to be imposed upon Western–Southern's insurance agents.[12] The Court's decision does not preclude any of the *Grennell* plaintiffs from amending his or her complaint to allege, with the particularity required by Federal Rule of Civil Procedure 9(b), fraud committed by individual insurance agents.

## III. Conclusion

Based on the foregoing, none of the *Grennell* plaintiffs are residents of the same state as any of the defendants, and the only remaining defendant, Western–Southern, is not a resident of West Virginia. While the parties have not addressed the amount in controversy in the individual cases, the Court believes that the nature of the claims could put recovery for each plaintiff at well over $75,000, the threshold amount required to invoke diversity jurisdiction. Thus, removal of the 1,187 cases that comprise the *Grennell* group was proper. Finally, the Court notes that to

---

that nondiverse or resident defendants have been fraudulently joined, it has done so only upon concluding that the plaintiff cannot state a cause of action against them, thereby making dismissal appropriate. In finding nondiverse plaintiffs misjoined, however, the court only finds that their claims should not have been brought alongside those of the di-

verse plaintiffs, not that they fail to state claims. Thus, remand is the appropriate remedy, not dismissal.

12. Indeed, the Court is not even convinced that West Virginia law governs the claims of the *Grennell* plaintiffs.

this point in the litigation, the parties have been permitted to file a single document that pertains to all of the cases in the *Grennell* group, although no formal motion for consolidation under Rule 42(a) has been filed. In order to determine the most efficient way to proceed with this action, the Court will conduct a case management conference with counsel for all parties pursuant to Federal Rule of Civil Procedure 16(a).

Plaintiffs were misjoined in Mason County Circuit Court and the severance of their claims upon removal was therefore proper. Plaintiffs have also fraudulently joined the individual, resident defendants. Therefore the Court **DISMISSES WITHOUT PREJUDICE** the claims against Defendants John Thabet, George Crump, Roger Shinn, Howard Parker, James Elias, Terry Shirley, and Thomas Russell. The Court **DENIES** Plaintiffs' Motion to Remand. Finally, the Court **SCHEDULES** a Case Management Conference for Monday, February 2, 2004 at 1:00 p.m. in Huntington.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties and to publish it on the Court's website.