552 S.E.2d 788

Julie D. HONAKER, Administratrix of
the Estate of Daniel R. Honaker, de-
ceased, Plaintiff below, Appellant,

v.

Burgess Wall MAHON, Defendant
below, Appellee.

No. 28460.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 23, 2001.

Decided May 25, 2001.

Marvin W. Masters, Masters & Taylor, L.C., Charleston, West Virginia, for appellant.

Mary H. Sanders, James R. Akers, II, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, West Virginia, for appellee.

STARCHER, Justice.

In this appeal from the Circuit Court of Greenbrier County, the plaintiff appeals two March 20, 2000 orders denying the plaintiff's motion to set aside a jury verdict adverse to the plaintiff, and refusing to grant the plaintiff a new trial. The plaintiff, now appellant, contends that a new trial is warranted because the trial court erred in its instructions to the jury, imposing a duty of care greater than that of a reasonable, prudent person upon the plaintiff. The plaintiff also contends that the jury's verdict should have been set aside because the defendant introduced prejudicial evidence in violation of the trial court's rulings on a motion *in limine.*

After carefully reviewing the limited record presented by the parties, we agree with the plaintiff-appellant's arguments. As set forth below, we reverse the trial court's orders, and remand the case for further proceedings.

## I.

### *Facts and Background*

The plaintiff below and appellant, Julie D. Honaker, seeks to recover underinsured motorist insurance benefits for an automobile wreck that resulted in the death of her husband, Daniel R. Honaker. The facts surrounding that wreck are greatly disputed by the parties.

The wreck occurred on March 23, 1996, at an intersection of two roads near Caldwell, West Virginia. Mr. Honaker approached the intersection from the north on Stonehouse Road, a secondary road, and stopped intending to turn left and head east on U.S. Route 60. Conversely, at the same time, a Chevrolet Blazer traveling west on Route 60 slowed as it approached the intersection and began to make a right turn onto Stonehouse Road. As the Blazer was turning, Mr. Honaker entered the intersection and began to turn left to drive eastward.

Some distance behind the Blazer was another vehicle heading west on Route 60 driven by defendant below and appellee, Burgess Wall Mahon. Defendant Mahon was a high school senior on his way to pick up his girlfriend for the school prom.

As Mr. Honaker was making his left turn, his vehicle was struck by defendant Mahon's vehicle. Mr. Honaker was killed instantly.

The plaintiff concedes that a small portion of Mr. Honaker's vehicle was in defendant Mahon's westbound lane. However, the plaintiff asserts that defendant Mahon, hurrying to take his girlfriend to the prom, crossed the double-yellow line in the center of Route 60, and entered Mr. Honaker's lane in an attempt to illegally pass the turning Blazer. When defendant Mahon passed the Blazer and entered the eastbound lane, the plaintiff argues that Mahon caused the collision that killed Mr. Honaker.

The defendant, meanwhile, takes the position that he did nothing wrong. The defendant argues that he was in his own lane when Mr. Honaker suddenly pulled out in front of him, causing the collision.

The plaintiff, representing Mr. Honaker's estate, sought to recover damages from defendant Mahon's liability insurance carrier. The defendant's liability insurance carrier paid the $100,000.00 limits of Mr. Mahon's policy to the estate, and in return Mr. Mahon was personally released from liability.

The plaintiff then sought coverage from her own underinsured motorist insurance carrier, USF & G, but the insurance carrier refused to offer any of the $100,000.00 policy limits. The plaintiff then filed the instant action against her insurance carrier to recov-

er underinsured motorist benefits. USF & G chose to defend the action in the name of the defendant driver, Mr. Mahon.[1]

After several years of litigation and one mistrial, the plaintiff's claim proceeded to trial against the insurance carrier in a bifurcated format, such that the jury only heard evidence regarding whether either Mr. Honaker or defendant Mahon was negligent, and whether that negligence proximately caused the plaintiff's damages. No evidence was presented regarding the plaintiff's damages, and accordingly, the plaintiff did not testify at trial.[2]

After several days of trial, on October 22, 1999, the jury returned a verdict finding that defendant Mahon was only 40% responsible for the collision, and that Mr. Honaker was 60% responsible. Based upon this apportionment of liability, the circuit court entered a judgment for the defendant. *See Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979).[3]

Following the jury's verdict, the plaintiff filed motions to set aside the verdict and sought a new trial. In two orders dated March 20, 2000, the circuit court denied the plaintiff's motions.

The plaintiff now appeals.

1. When an uninsured or underinsured defendant motorist is sued, West Virginia law requires a policyholder intending to rely upon uninsured or underinsured motorist insurance coverage to serve a copy of the summons and complaint upon the insurance company providing the coverage as though the insurance company were a named party defendant. The insurance company then may file pleadings and take any action in the name of the uninsured or underinsured defendant. *See W.Va.Code*, 33–6–3(d) [1995]. However, the insurance carrier, if it so chooses, is entitled to appear and defend in its own name. Syllabus Point 4, *State ex rel. State Farm Mut. Auto. Ins. Co. v. Canady*, 197 W.Va. 107, 475 S.E.2d 107 (1996).

2. The limited record presented to this Court contains no information regarding why the plaintiff's case was bifurcated, separating the issues of liability and damages. We note, however, that bifurcated trials are, in general, to be avoided. As we recently held in Syllabus Point 4 of *Sheetz, Inc. v. Bowles, Rice, McDavid, Graff & Love, PLLC*, 209 W.Va. 318, 547 S.E.2d 256 (2001):

II.

*Discussion*

The plaintiff contends that the circuit court erred in not setting aside the jury's verdict and granting the plaintiff a new trial, and sets forth two grounds why the circuit court's decision was in error. First, the plaintiff contends that the circuit court's instruction to the jury that Mr. Honaker was required to "ensure" that he could enter the intersection safely was prejudicial and not supported by law. Second, the plaintiff contends that a new trial should have been awarded due to inflammatory questions asked by defense counsel in violation of the circuit court's order on a motion *in limine*.

A.

*Jury Instructions*

The first issue raised by the plaintiff concerns the instructions, proffered by the defendant and given by the trial court to the jury, regarding the standard of care which Mr. Honaker was required to exercise. We first review jury instructions to determine whether the instructions were a correct statement of the law. *See, e.g.*, Syllabus Point 4, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). "An instruction which does not correctly state the law is erroneous

West Virginia jurisprudence favors the consideration, in a unitary trial, of all claims regarding liability and damages arising out of the same transaction, occurrence or nucleus of operative facts, and the joinder in such trial of all parties who may be responsible for the relief that is sought in the litigation.

3. In Syllabus Point 3 of *Bradley*, this Court abandoned the doctrine of contributory negligence and adopted "modified" comparative negligence, such that a party can recover damages in a tort action "so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident."

While the doctrine of "modified" comparative negligence remains the current status of our negligence law, the author of this opinion questions the continued use of this doctrine, and suggests that "pure" comparative negligence, whereby "a plaintiff may recover regardless of the degree of his contributory negligence," may be a fairer alternative. *See Bradley*, 163 W.Va. at 337, 256 S.E.2d at 883.

and should be refused." Syllabus Point 2, *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971).

The defendant proffered the following jury instruction (with emphasis added), and the instruction was given by the trial court:

> The laws of this State required Daniel Honaker, making a left turn on a two-way roadway, to only make the turn when he could do so with reasonable safety. The laws of this [S]tate also required Mr. Honaker to yield the right-of-way to oncoming traffic and to keep a careful lookout for other vehicles to *ensure* such movement could be made safely.

The plaintiff argues that this instruction, by requiring Mr. Honaker to "ensure such movement could be made safely," incorrectly required Mr. Honaker to guarantee his own safety despite the acts or omissions of the defendant. The plaintiff further contends that the jury placed a great deal of importance on the instruction because it requested that the trial court re-read the instruction before deciding the case.

In its brief to this Court, the defendant cites to no cases in our jurisprudence, and no statutes in the *West Virginia Code*, which impose upon a driver a duty to "ensure" that actions can be performed "safely." Instead, the defendant urges that this Court should review the instruction as a whole and examine the entire instruction to determine its accuracy. The defendant contends that, upon a full reading of the instruction, it is clear that the circuit court did not abuse its discretion in instructing the jury that Mr. Honaker had a duty to "ensure" that his actions could be performed "safely." *See, e.g., State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).[4]

■ It is axiomatic in the context of negligence lawsuits that a party has a duty to exercise "due care." In other words, people are required to exercise the same degree of care which would be exercised by a reasonably prudent person in like circumstances.

■ "Negligence" is either the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such a person under the existing circumstances would not have done. Negligence occurs when a party engages in "conduct unaccompanied by that degree of consideration attributable to the man of ordinary prudence under like circumstances." Syllabus Point 4, *Patton v. City of Grafton*, 116 W.Va. 311, 180 S.E. 267 (1935). "Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute; but is always relative to some circumstances of time, place, manner or person." Syllabus Point 1, *Dicken v. Liverpool Salt & Coal Co.*, 41 W.Va. 511, 23 S.E. 582 (1895).

■ Under principles of ordinary negligence, people are not required to guarantee, "ensure" or otherwise take extraordinary caution to make certain that their actions will be accomplished safely. Instead, each person is required to act only as an ordinary, prudent person:

> This criterion—the man of ordinary prudence—is neither an automaton nor an exceptional man, but an ordinary member of the community. Being an ordinary person, the law makes allowance for mere errors in his judgment and does not visualize him as exercising extraordinary care. Normality is the quintessence of this characterization.

Syllabus Point 6, *Patton v. City of Grafton*, 116 W.Va. 311, 180 S.E. 267 (1935).

Our jurisprudence holds that Mr. Honaker was charged with exercising the care of a reasonable prudent person under similar circumstances. He was not charged with acting as an "automaton" or as an "exceptional man," ensuring his safety or that of any other person.

■ Accordingly, we find that the circuit court's jury instruction unfairly misled

---

**4.** In Syllabus Point 4 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), we stated, in part, that:

> Jury instructions are reviewed by determining whether the charge, reviewed as a whole, suffi- ciently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy.

the jury concerning the standard of care required of Mr. Honaker, and was therefore erroneous. "An erroneous instruction is presumed to be prejudicial and warrants a new trial unless it appears that the complaining party was not prejudiced by such instruction." Syllabus Point 2, *Hollen v. Linger*, 151 W.Va. 255, 151 S.E.2d 330 (1966). After reviewing the record presented by the parties, we believe that the instruction was prejudicial and warrants a new trial.

## B.

### *Violation of the Circuit Court's Order on a Motion in Limine*

The second issue raised by the plaintiff concerns questions asked by defense counsel in violation of a pre-trial order of the circuit court.

Prior to trial, counsel for the plaintiff filed a motion *in limine* to exclude, among other things, "[t]he time or circumstances under which plaintiff employed an attorney." At the pre-trial hearing on the plaintiff's motion, counsel for the defendant stated that she could not "imagine that being a subject of cross-examination or direct examination." Accordingly, the circuit court entered an order granting the plaintiff's motion.

Also prior to trial, the plaintiff indicated her intention to call as a witness Michael Wiley. Mr. Wiley, a friend of the plaintiff's family, claimed that shortly before the defendant's collision with Mr. Honaker, he had seen the defendant speeding and driving recklessly. Mr. Wiley apparently alleged that the defendant passed him in a dangerous fashion, crossing the center line, and that he had immediately written down the defendant's license number to give to the authorities. A short time later—perhaps 20 minutes—Mr. Wiley heard the sirens of the emergency vehicles responding to the collision between the defendant and Mr. Honaker.

Upon a motion by the defendant, the circuit court initially excluded Mr. Wiley's testimony, finding that the prejudicial effect of the evidence outweighed its probative value.[5]

However, when the defendant repeatedly offered evidence to the effect that the defendant was a "safe" driver, the circuit court allowed Mr. Wiley to testify as a rebuttal witness for the plaintiff.

Upon cross-examination of Mr. Wiley, in violation of the trial court's pre-trial order, counsel for the defendant asked Mr. Wiley the following questions:

Q. ... Okay, well, by April 1st, Mrs. Honaker already has hired Marvin Masters to bring a lawsuit; correct?

A. That's my understanding, yes.

Q. So that's just within a week or so of the accident?

A. Yes.

Q. And her husband is just barely in the ground; correct?

Counsel for the plaintiff contends that these questions were a clear violation of the trial court's order, and prejudiced the plaintiff's case. Counsel for the defendant argues that these questions were designed to impeach Mr. Wiley's credibility by showing he had a close relationship to the plaintiff's family.

▆▆▆▆ In Syllabus Point 4 of *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995), we stated that:

> Once a trial judge rules on a motion *in limine*, that ruling becomes the law of the case unless modified by a subsequent ruling of the court. A trial court is vested with the exclusive authority to determine when and to what extent an *in limine* order is to be modified.

In explaining this rule, we further stated that:

> Like any other order of a trial court, *in limine* orders are to be scrupulously honored and obeyed by the litigants, witnesses, and counsel. It would entirely defeat the purpose of the motion and impede the administration of justice to suggest that a party unilaterally may assume for himself the authority to determine when and under what circumstances an order is no longer effective. A party who violates a motion *in limine* is subject to all sanctions legally available to a trial court, including contempt, when a trial court's evidentiary

---

5. The plaintiff has not appealed the propriety of the circuit court's ruling.

order is disobeyed. To be clear, the only participant not bound by the *in limine* ruling is the trial court.

*Tennant,* 194 W.Va. at 113, 459 S.E.2d at 390 (footnote omitted).

Counsel for the defendant clearly violated the circuit court's evidentiary ruling that prohibited questioning regarding the plaintiff's hiring of an attorney. The defendant, however, argues that the plaintiff did not contemporaneously object to the questions at the time of trial, and instead, for strategic reasons, waited until after the jury had returned an adverse verdict. The defendant contends that because the plaintiff did not object, the plaintiff waived any rights to appeal this issue. *See Tennant,* 194 W.Va. at 114, 459 S.E.2d at 391.

 The plaintiff argues that the defendant's violations of the circuit court's evidentiary ruling constitute "plain error," and that the plaintiff's lack of objection does not preclude this Court from reviewing the issue. The "plain error" doctrine creates a limited exception to the general rule that a party's failure to object waives any right to appeal an issue. "For the purposes of West Virginia's 'plain error' rule, a 'plain' error is one that is clear and uncontroverted at the time of appeal." Syllabus Point 2, *State v. Marple,* 197 W.Va. 47, 475 S.E.2d 47 (1996). In Syllabus Point 7 of *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), we set forth a four-part test that an appellant must follow in order to receive the benefit of the "plain error" doctrine:

> To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.

Our review of the record presented indicates that defense counsel, by asking questions regarding the plaintiff's hiring of an attorney, plainly created error in the trial by violating the circuit court's order. Counsel's actions thereby injected prejudicial commentary into the trial which detrimentally affected the substantial rights of the plaintiff and was likely to have seriously affected the fairness, integrity, and public reputation of the judicial proceedings. We therefore may examine the issue raised by the plaintiff, and can determine whether defense counsel's actions may form the basis for a new trial.[6]

 The purpose of a motion *in limine* is to prevent an opposing party from asking prejudicial questions, or introducing prejudicial evidence, in front of the jury without asking the trial court's permission. Jurisdictions are generally in agreement that a deliberate and intentional violation of a trial court's ruling on a motion *in limine,* and thereby the intentional introduction of prejudicial evidence, is a ground for reversing a jury's verdict. However, "[i]n order for a violation of an in limine motion to serve as the basis for a new trial, the order must be specific in its prohibitions, and violations must be clear." *Kjerstad v. Ravellette Publications, Inc.,* 517 N.W.2d 419, 426 (S.D.1994).

 In determining whether a jury's verdict may be set aside due to a party's violation of a trial court's ruling on a motion *in limine,* courts consider various factors. First and foremost is a determination of whether the evidence excluded by the court's order was deliberately solicited or introduced by the party, or whether the violation of the court's order was inadvertent. *See Warner v. State,* 897 P.2d 472, 474–75 (Wyo.1995). For instance, courts often examine whether the violation occurred once, or whether it repeatedly occurred throughout the trial. Additionally, the violation of the court's order must have been reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Kwiatkowski,* 915 S.W.2d 662, 664 (Tex.App.1996).

6. We recognize that in *Tennant,* 194 W.Va. at 114, 459 S.E.2d at 391, we suggested a seemingly "absolute" rule that a party complaining on appeal of the admission of evidence injected in violation of a trial court's evidentiary ruling bears the responsibility for objecting and preserving the issue for appellate review—and that a failure to object absolutely waives any rights to appeal the issue. However, as we set forth in the text, there are times when a party's intentional violation of a trial court's evidentiary ruling can be so inflammatory and prejudicial that no amount of objecting can "unring" the bell for the jury. In those circumstances a court, even in the absence of a contemporaneous objection, may subsequently set aside a jury's verdict that was affected by a party's intentional violation of a trial court's ruling on a motion *in limine.*

■ Courts also consider the inflammatory nature of the violation, and whether the violation prejudiced the substantial rights of the party seeking to set aside the jury's verdict. *Kjerstad*, 517 N.W.2d at 426. Part of this analysis includes a consideration of whether the challenged evidence was presented to the jury directly, or merely by an oblique reference, and whether the offering party attempted to exploit the improperly introduced evidence. *Warner*, 897 P.2d at 474–75.

■ Courts will review a violation of a trial court's ruling on a motion *in limine* to see if it was curable by a jury instruction to disregard the evidence. If the violation was so inflammatory and prejudicial in its nature that it could not have been cured by an instruction to disregard, the jury's subsequent verdict may be set aside.[7] *Dove v. Director, State Workers' Compensation Division*, 857 S.W.2d 577, 580 (Tex.App.1993); *National Union Fire Ins. Co. of Pittsburgh*, 915 S.W.2d at 664. Courts may set aside a verdict when a party's violation created the likelihood of jury confusion, wasted the jury's time on collateral issues, or otherwise wasted scarce judicial resources. *Janopoulos v. Harvey L. Walner & Associates, Ltd.*, 866 F.Supp. 1086, 1093 (N.D.Ill.1994).

■ We therefore hold that a deliberate and intentional violation of a trial court's ruling on a motion *in limine*, and thereby the intentional introduction of prejudicial evidence into a trial, is a ground for reversing a jury's verdict. However, in order for a violation of a trial court's evidentiary ruling to serve as the basis for a new trial, the ruling must be specific in its prohibitions, and the violation must be clear.

■ In deciding whether to set aside a jury's verdict due to a party's violation of a trial court's ruling on a motion *in limine*, a court should consider whether the evidence excluded by the court's order was deliberately introduced or solicited by the party, or whether the violation of the court's order was inadvertent. The violation of the court's ruling must have been reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. A court should also consider the inflammatory nature of the violation such that a substantial right of the party seeking to set aside the jury's verdict was prejudiced, and the likelihood that the violation created jury confusion, wasted the jury's time on collateral issues, or otherwise wasted scarce judicial resources. The court may also consider whether the violation could have been cured by a jury instruction to disregard the challenged evidence.

■ In the instant case, counsel for the defendant admits to intentionally asking Mr. Wiley about circumstances concerning the plaintiff's hiring of an attorney, in violation of the trial court's ruling on the plaintiff's motion *in limine*, but argues that the questions were designed to show the jury the witness's relationship to the plaintiff and her family. We plainly stated in *Tennant* that a trial court's "*in limine* orders are to be scrupulously honored and obeyed by the litigants, witnesses and counsel." 194 W.Va. at 113, 459 S.E.2d at 390. If counsel wanted to renew the request to admit any of the evidence excluded by the trial court's order, it was counsel's duty to approach the trial judge outside of the jury's presence. This was not a situation where the questions were asked in the "heat of battle," or where the admission of the excluded evidence was beyond counsel's control. Instead, counsel for the defendant admits to intentionally intro-

---

7. As one court astutely stated in its discussion of an attorney's violation of a trial court's ruling of a motion *in limine*:

> If prejudicial matters are brought before the jury, no amount of objection or instruction can remove the harmful effect, and the plaintiff is powerless unless he wants to forego his chance of a trial and ask for a mistrial. Once the question is asked, the harm is done. Under the harmless error rule many of these matters would probably not be reversible error even though they have a subtle but devastating effect upon the plaintiff's case.

> Perhaps the greatest single advantage to a motion *in limine* is not having to object in the jury's presence to evidence which is "logically relevant." Jurors cannot be expected to understand why they should not be allowed to consider *all* evidence which is related to the case, and will usually resent the fact that an objection kept them from hearing it.

*Lapasinskas v. Quick*, 17 Mich.App. 733, 737 n. 1, 170 N.W.2d 318, 319 n. 1 (1969) (citations omitted).

ducing evidence, for strategic reasons, which the jury was clearly not supposed to hear.

The trial court's order on the plaintiff's motion *in limine* specifically excluded evidence regarding the time or circumstances under which the plaintiff employed an attorney. The defendant clearly violated the court's order by asking leading questions about the plaintiff's employment of an attorney, when "her husband is just barely in the ground." · The evidence was, by defense counsel's admission, deliberately introduced.

Furthermore, the questioning appears to have been reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. The questions, asked in a leading format, regarding the plaintiff's actions were asked of the final witness, in the final series of questions, at the end of a week-long trial,[8] when the plaintiff herself neither testified nor was given a chance to respond to the collateral issues raised by the questions. The questions, posed in an inflammatory manner, were likely to focus the jury's attention on a collateral issue which was wholly irrelevant to whether Mr. Honaker or Mr. Mahon were negligent, and whether that negligence proximately caused Mr. Honaker's death. Lastly, a jury instruction to disregard defense counsel's questions would not have cured the violation of the trial court's order.

Having reviewed the record presented in this case, we conclude that the circuit court erred in not setting aside the jury's verdict and granting the plaintiff a new trial. We therefore reverse the circuit court's orders, and remand this case for a new trial.

### III.

### *Conclusion*

The circuit court's March 20, 2000 orders are reversed, and the case is remanded for further proceedings.

Reversed and Remanded.

---

8. In her brief, the plaintiff suggests that the practice of introducing prejudicial remarks at the end of a case or in closing argument has become a routine practice with some attorneys because, practically, "what judge is going to mistry a case at the end of a week of trial?" The plaintiff contends, anecdotally, that defense attorneys often violate a trial court's evidentiary rulings in an attempt to "flush a losing case down the drain at plaintiff's expense."

We caution trial courts to be vigilant against such misconduct, and reiterate our holding in *Tennant* that a "party who violates a motion *in limine* is subject to all sanctions legally available to a trial court, including contempt, when a trial court's evidentiary order is disobeyed." 194 W.Va. at 113, 459 S.E.2d at 390.

The instant case contains an additional twist, because the defendant is actually the plaintiff's own insurance carrier resisting paying coverage available under an insurance policy purchased by the plaintiff. In Syllabus Point 1 of *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986), we held that when a policyholder "substantially prevails" in litigation to recover proceeds available under their own insurance policy, their insurance company is liable for: (1) the policyholder's reasonable attorneys' fees in vindicating his or her claim; and (2) the policyholder's "damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience." In other words, if the plaintiff in the instant case were to substantially prevail in a trial (or in this case, a re-trial), the plaintiff could recover all her attorney's fees and damages incurred through the insurance company's refusal to pay the proceeds of her insurance policy.

Furthermore, this Court has held that an insurance company owes its own policyholders a duty of good faith and fair dealing, *see Shamblin v. Nationwide Mut. Ins. Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990); *Elmore v. State Farm Mut. Auto. Ins. Co.*, 202 W.Va. 430, 504 S.E.2d 893 (1998), and a duty to refrain from statutory unfair claim settlement practices, *see Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981); *State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994). These duties exist regardless of whether the policyholder "substantially prevails." More importantly, these duties are not delegable, and insurance companies are therefore responsible for the actions of the attorneys they employ. *See, e.g., Kohlstedt v. Farm Bureau Mut. Ins. Co.*, 258 Iowa 337, 340, 139 N.W.2d 184, 185 (1965) ("The duty case on the insurer is to conduct good faith investigation of all aspects of the case ... This means its employees and agents, including doctors and lawyers, must act in good faith."); *Kooyman v. Farm Bureau Mut. Ins. Co.*, 315 N.W.2d 30 (Iowa 1982); *Cooper v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 921 P.2d 1297 (Okl.App.1996); *Schimizzi v. Illinois Farmers Ins. Co.*, 928 F.Supp. 760 (N.D.Ind.1996); *Majorowicz v. Allied Mut. Ins. Co.*, 212 Wis.2d 513, 569 N.W.2d 472 (1997). *See also,* Lee R. Russ, 14 *Couch on Insurance 3d* § 198:17 [1999].