**Frank MORDESOVITCH, Plaintiff,**

v.

**WESTFIELD INSURANCE COMPANY, Defendant.**

No. CIV.A.2:02–0078.

United States District Court,
S.D. West Virginia,
Charleston Division.

Nov. 27, 2002.

Christopher J. Heavens, Heavens Law Offices, Charleston, WV, John Einreinhofer, charleston, WV, for plaintiff.

Tanya M. Kesner, Brent K. Kesner, Kesner, Kesner & Bramble, Charleston, WV, for defendants.

### MEMORANDUM OPINION AND ORDER

STANLEY, United States Magistrate Judge.

This civil action is a so-called "first party bad faith claim"[1] that Defendant and its counsel engaged in unfair trade practices in connection with Plaintiff's claim for underinsured motorist insurance coverage benefits following a 1999 fatal accident. For the purpose of this Memorandum Opinion and Order, the court assumes to be true the allegations that Plaintiff's son, Charles Mordesovitch, a pedestrian, was killed when he was struck by a vehicle operated by a drunk driver who had become intoxicated at a bar. Plaintiff, represented by Christopher Heavens, was insured by Defendant. In the underlying action, Plaintiff sued the driver, the bar, and Defendant (which was represented by the law firm of Kesner, Kesner & Bramble). Plaintiff and Defendant executed a settlement agreement in which Defendant paid the $300,000 limits of its underinsured motorist coverage to Plaintiff, and Plaintiff signed a "Release, Settlement and Subrogation Agreement." The Agreement provided that "Westfield shall be subrogated to the extent of its payment of underinsurance and medical payments to [Plaintiff]." Plaintiff continued his action against the bar and ultimately recovered the full limits of the liability insurance coverage available to the bar. Plaintiff established that the estate had not been made whole by the settlement with the bar's insurer, and Defendant ultimately waived its subrogation claim. Plaintiff then filed the instant action, alleging that Defendant, acting through its adjuster Eric Sikorski and the Kesner law firm, engaged in unfair trade practices by improperly seeking subrogation from the proceeds of the settlement with the bar. Plaintiff contends "that Westfield illegally sought subrogation from the plaintiff and his family, and then attempted in bad faith to delay the plaintiff's settlement with another tortfeasor as a way of pressuring the plaintiff to pay mon-

1. *See State ex rel. Allstate Ins. Co. v. Gaughan,* 203 W.Va. 358, 508 S.E.2d 75, 86 (1998).

ey to Westfield." (Plaintiff's Response, # 66, at 2.)

Currently pending before the court are four motions concerning discovery. They are as follows:

1. Defendant's Motion for Protective Order (docket sheet document # 58), filed October 10, 2002, to preclude Plaintiff from deposing attorneys of the Kesner law firm;

2. Plaintiff's Motion for Additional Time to Supplement his Opposition to Defendant's Motion for Protective Order (# 72);

3. Plaintiff's Motion to Compel Defendant to Provide Full and Complete Answers to Discovery and to Produce Privilege Information to the Court for In Camera Review (# 75); and

4. Plaintiff's Supplemental Motion to Compel (# 78).

The parties have filed memoranda in support of their positions with respect to each motion.

## 1. Motion for Protective Order

Mr. Kesner served a notice to depose Mr. Heavens, and Mr. Heavens served a notice to depose Mr. Kesner and other attorneys at the Kesner law firm. Defendant contends that "litigation conduct by an insurer's attorneys is not actionable or relevant in the context of an unfair trade practices claim," and suggests that the purpose of the depositions is to harass Defendant and its counsel. (Motion, # 58, at 3.) It asserts six reasons for its Motion: (1) the Unfair Trade Practices Act is designed to address pre-litigation conduct relating to the handling of claims, and Plaintiff is complaining of conduct after suit was filed; (2) counsel's knowledge which was acquired through communications with Defendant is protected by the attorney-client privilege; (3) attorneys are not subject to the Unfair Trade Practices Act, and insur-

ance companies cannot be liable for their counsel's actions; (4) there are other mechanisms for regulating attorney conduct (the Rules of Professional Conduct, and the Federal Rules of Civil Procedure, for example); (5) Plaintiff's motive in seeking to depose Defendant's counsel is to respond to Defendant's taking of a deposition of Plaintiff's counsel; and (6) Plaintiff did not tender an appearance fee when he served a deposition subpoena on Defendant's counsel. Defendant cites *State ex rel. Federal Kemper Ins. Co. v. Zakaib*, 203 W.Va. 95, 506 S.E.2d 350 (1998), and West Virginia Circuit Court decisions in support of its arguments.

Plaintiff's Response (# 66) notes that Plaintiff did not object to the deposition of Mr. Heavens, and Plaintiff waived his attorney-client privilege. (Response, at 1.) Plaintiff contends that during the adjustment of Plaintiff's claim for underinsured motorist coverage and prior to the filing of the *instant* action, Defendant used adjuster Erik Sikorski and the Kesner law firm interchangeably. *Id.*, at 2. Plaintiff argues that if the Kesner depositions are precluded, then Plaintiff will not be able to discover Defendant's reasons for its decisions in the adjustment of the claim, noting that Westfield has lodged broad objections to Plaintiff's discovery requests. *Id.*, at 2–3. During Plaintiff's deposition of Erik Sikorski, Mr. Brent Kesner instructed the witness not to answer certain questions concerning the gathering of information. *Id.*, at 4. Thus Plaintiff contends that prior to the filing of this case, the Kesner firm was performing in an investigative and/or consulting capacity, and not as counsel for Westfield. *Id.* Plaintiff disclaims any interest in learning the content of communications between Defendant and the Kesner firm after the instant action was filed. *Id.*, at 5. Plaintiff relies on *State ex rel. USF & G v. Canady*, 194 W.Va. 431, 460 S.E.2d

677 (1995), *Honaker v. Mahon,* 210 W.Va. 53, 552 S.E.2d 788 (2001), and *State ex rel. Allstate Ins. Co. v. Gaughan,* 203 W.Va. 358, 508 S.E.2d 75 (1998).

In its Reply (# 68), Defendant asserts that Plaintiff misstates the nature of the underlying action and the Kesner firm's role in representing Westfield in that litigation. (Reply, at 2.) Defendant notes that Westfield was a named defendant in the underlying action against the drunk driver and the bar, and that the Kesner firm was not involved until the complaint in the underlying action was served on Westfield. *Id.,* at 3–4. Defendant asserts that subrogation was not an issue until Westfield paid the uninsured motorist coverage to Plaintiff in August of 2001. *Id.,* at 4. Thus Defendant argues that the Kesner firm was, at all times, acting as counsel for Westfield, not as an investigator or adjuster, and that Westfield is entitled to invoke its right to the traditional attorney-client privilege. Defendant further contends that the unique facts of *Gaughan* distinguish it from the facts presented here. *Id.,* at 5–6.

Rule 501 of the Federal Rules of Evidence provides as follows:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness … shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness … shall be determined in accordance with State law.

Pursuant to the second sentence of Rule 501, state law supplies the rule of decision in this matter alleging violations of the West Virginia Unfair Trade Practices Act.

■ In *State ex rel. USF & G v. Canady,* 194 W.Va. 431, 460 S.E.2d 677, 688 (1995), an Unfair Trade Practices Act case, the Supreme Court of Appeals of West Virginia articulated the three elements necessary to determine whether the attorney-client privilege exists: "(1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be intended to be confidential." A party waives the attorney-client privilege

> by asserting claims or defenses that put his or her attorney's advice in issue. The classical example is where an attorney is sued by a client for legal malpractice. *See* 8 Wigmore, *supra* § 2327 at 638. A defendant also may waive the privilege by asserting reliance on the legal advice of an attorney. *Hunt [v. Blackburn],* 128 U.S. [464,] 470, 9 S.Ct. [125,] 127, 32 L.Ed. [488,] 491 [1888] (client waived privilege when she alleged as a defense that she was mislead by counsel); *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156 (9th Cir.1992) (party's claim that its tax position was reasonable because it was based on advice of counsel puts advice in issue and waives privilege).

*Id.* In *USF & G,* the court cautioned that the party asserting the privilege must take "the affirmative step of placing the legal advice they received in issue. * * * [A]dvice is not in issue merely because it is relevant, and it does not come in issue merely because it may have some affect [sic] on a client's state of mind. Rather, it becomes an issue where a client takes

affirmative action to assert a defense and attempts to prove that defense by disclosing or describing an attorney's communication." *Id.* at 688 n. 16 (citing *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 72 (D.N.J.1992); *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F.Supp. 363, 370–71 (D.N.J.1992)).

The West Virginia Unfair Trade Practices Act ("UTPA"), W. Va.Code § 33–11–4(9)(West 2002), lists fifteen types of conduct or failure to act which constitute unfair claim settlement practices. The statute prohibits a "person" from engaging in such practices, and defines "person" as "any individual, company, . . . or any other legal entity, including agents and brokers."

■ The UTPA does not specifically restrict its coverage to the handling of a claim prior to the institution of a legal proceeding. Contrary to Mr. Kesner's assertion, the Supreme Court of Appeals of West Virginia has not held that the UTPA is so limited. *State ex rel. Fed. Kemper Ins. Co. v. Zakaib*, 203 W.Va. 95, 506 S.E.2d 350 (1998), ruled on issues relating to *res judicata* and collateral estoppel, and did not address the correctness of the underlying ruling in a circuit court (exclusion of evidence of alleged unfair trade practices committed after an action is filed). Moreover, the circuit court cases cited by Defendant are irrelevant and not controlling.

■ A party may withhold information which is otherwise discoverable by claiming that the information is privileged, but the claim must be made expressly and must describe the nature of the information in a manner that will enable other parties to assess the applicability of the privilege. Rule 26(b)(5), Fed. R. Civ. Pro. The Kesner law firm had an attorney-client relationship with Defendant in the underlying litigation concerning Plaintiff's claims against the drunk driver, the bar, and Defendant. If there were confidential communications between the Kesner attorneys and Westfield in both the underlying litigation and the instant action, which fall within the requirements of *USF & G*, and as to which the privilege was not waived, then they are presumably entitled to protection. The party invoking the privilege has the burden of showing that it applies; it is not sufficient to invoke the privilege simply because a confidential relationship existed and thereby avoid a deposition.

If Plaintiff undertakes to depose one or more attorneys at the Kesner firm, and if the witness(es) invoke the attorney-client privilege (which, of course, belongs to Defendant), and if Plaintiff concludes that the privilege was improperly invoked or waived, then he will have the option of filing a motion to compel. If Plaintiff decides to go forward, the court expects counsel to conduct themselves in a courteous and professional manner, to cooperate in selecting a mutually convenient date, time and place for the deposition(s), serving deposition subpoena(s), and tendering the prescribed witness fee, and to conduct the questioning and answering in accordance with the Federal Rules of Civil Procedure and applicable cases.[2] The court declines, on the record before it, to assume that the Kesner attorneys have only information and testimony which is subject to a valid claim of privilege. For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion for a Protective Order (# 58) is denied.

**2. Motion for Additional Time**

On October 24, 2002, Plaintiff filed this Motion for Additional Time to Supplement

---

2. The court has read transcripts of depositions taken in this case and finds the exchanges between counsel to be unacceptable, unprofessional and rude. If such conduct continues, imposition of sanctions may be appropriate.

his Opposition to Defendant's Motion for Protective Order (# 72). Inasmuch as the court has denied Defendant's Motion for Protective Order, it is hereby **ORDERED** that the Motion for Additional Time is denied as moot.

### 3. Plaintiff's Motion to Compel and Supplemental Motion to Compel

The arguments presented with respect to the Motion for Protective Order are carried over to these motions. Plaintiff seeks an order requiring Defendant to make full and complete answers to Plaintiff's discovery requests and to produce all allegedly privileged information and documents to the court for *in camera* review. (Motion, # 75, at 1.)

As noted, Plaintiff's theory is that Defendant committed allegedly unfair trade practices by acting through its attorneys, the Kesner law firm, during the underlying action, and that Defendant's assertion of the attorney-client privilege thwarts Plaintiff's ability to conduct discovery. *Id.*, at 3. The allegedly unfair trade practice committed by Defendant was to assert a subrogation claim against Plaintiff when Defendant "knew or should have known it had no legal right to continue to do so." *Id.*, at 4.

Mr. Heavens argues that the wrongfulness of Defendant's conduct was proven by the fact that Defendant eventually withdrew its subrogation claim. *Id.*, at 5. He contends that *Honaker v. Mahon*, 210 W.Va. 53, 552 S.E.2d 788 (2001), stands for the proposition that an insurance company is responsible for the actions of the attorney which it employs and, thus, "there is little, if any, merit to Westfield's blanket assertions of attorney-client privilege and work product privilege as to its conduct in the underlying case." *Id.*, at 6. Mr. Heavens cites no authority for this extraordinary dismissal of the confidentiality of communications between lawyer and client.

Plaintiff also cites *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 508 S.E.2d 75, for his argument that communications between an insurance company and its attorney "are not privileged in certain situations where the insurance company is being sued for bad faith/UTPA violations." *Id.* Despite explicit language in *Gaughan* to the contrary, Mr. Heavens argues that he meets the standards in *Gaughan* for disclosure of privileged communications. *Id.*, at 7–8. In summary, Plaintiff poses the issue as "whether Westfield will be allowed to totally prevent the plaintiff from discovering anything that Westfield did in the underlying case when it utilized legal counsel to do it." *Id.*, at 9. With respect to specific discovery requests and responses, Plaintiff asserts that Defendant's answers invoked its privileges too broadly, despite Plaintiff's having made significant concessions in the amount of information he sought. *Id.*, at 10–11.

Defendant's Response to both Motions contends that (1) Plaintiff's Motion to Compel is untimely and was waived; (2) Defendant's assertion of the attorney-client privilege and work product doctrine is appropriate; (3) Defendant's discovery responses were appropriate; and (4) Plaintiff's *ad hominem* attacks on the Kesner law firm should be disregarded.

#### Timeliness

Mr. Kesner argues that Plaintiff's Motions to Compel are not timely because they were filed more than thirty days after Defendant served its responses, citing Local Rule 3.07.

Mr. Heavens responds that his motions are timely, because "this Court entered an order stating that Motions to Compel were to be filed by October 30, 2002." (Reply, # 81, at 2.) No such order has been entered.

Plaintiff also asserts that the presiding District Judge extended the discovery pe-

riod by Order entered November 6, 2002 (# 77), and he should be permitted to obtain appropriate responses to his discovery requests. It is true that Chief Judge Haden extended discovery, permitting it to go forward to February 2, 2003. Given the extension of the discovery period, it is more efficient to decide the pending motions on the merits rather than on a technical failure to comply with the thirty day deadline.

### Assertion of the Privileges

■ Defendant argues that "all of the attorney-client communications at issue here took place in the context of direct litigation between the Plaintiff and Westfield." (Response, at 7–8.) It contends that the privilege "extends beyond the attorney to others who, at the attorney's direction, are aware of confidential information," citing *State ex rel. USF & G Co. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995). *Id.*, at 8. Westfield notes that *Honaker* does not stand for the proposition asserted by Plaintiff, and that *State ex rel. Allstate Ins. Co. v. Gaughan*, a third party bad faith claim, is irrelevant. *Id.*, at 9–10.

Plaintiff's Reply contends that Defendant was named as a party defendant in the underlying action only as an underinsured carrier of Plaintiff, and that Plaintiff did not file a direct claim against Defendant until the instant action. (Reply, at 2.) Mr. Heavens also cites to recent court decisions, including *Wise v. Travelers Indem. Co.*, 192 F.Supp.2d 506 (N.D.W.Va. 2002). *Id.*, at 3. Plaintiff argues that Defendant erroneously reads *Gaughan*, and that first party bad faith claims should have even broader discovery rights than third party bad faith claims. *Id.*, at 4. Plaintiff believes that Westfield knew or should have known that it had no right to insist on subrogation for payments made to Plaintiff by anyone other than an underinsured motor vehicle operator, and that Defendant now wants to shield from discovery those documents which would reveal its wrongful, albeit temporary, demand for subrogation. *Id.*, at 6.

The statute which provides for underinsured motorist coverage, W. Va.Code § 33–6–31(b), provides that a motor vehicle insurance policy issued in West Virginia "shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an ... underinsured motor vehicle up to [a prescribed] amount ...." The notice and subrogation rights of the insurance company are set forth in §§ 33–6–31(d) and (f):

(d) Any insured intending to rely on the coverage required by subsection (b) of this section shall, if any action be instituted against the owner or operator of an ... underinsured motor vehicle, cause a copy of the summons and a copy of the complaint to be served upon the insurance company issuing the policy, in the manner prescribed by law, as though such insurance company were a named party defendant; such company shall thereafter have the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the ... underinsured motor vehicle or in its own name.

\* \* \* \* \* \*

(f) An insurer paying a claim under the endorsement or provisions required by subsection (b) of this section shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made. \* \* \* Any recovery against such owner or operator shall be paid to the insurance company to the extent that such insurance company shall have paid the insured in the action brought against such owner or operator ....

Plaintiff chose to name Westfield as a party defendant in the underlying action, rather than to serve Defendant with copies of the summons and complaint. Nothing in the quoted sections of the West Virginia Code suggests that insurance companies relinquish their right to assert the attorney-client privilege in conflicts with their insureds over the payment of underinsured motorist coverage. The dispute between Plaintiff and Westfield arose in the underlying case and continues in the instant litigation; in both cases, Westfield retained the Kesner law firm. Defendant is thus presumably entitled to assert such privileges as normally apply.

The court is unpersuaded that *Honaker v. Mahon* stands for the proposition offered by Mr. Heavens. *Honaker* and its footnote 8 does not constitute a holding that an insurance company forfeits its attorney-client privilege when an insured accuses the company of engaging in unfair trade practices. *Honaker's* footnote 8 merely states the obvious: when an attorney purposefully violates a ruling *in limine* to his client's advantage, the client will suffer the detriment of a new trial being awarded.

The court is similarly unpersuaded by Mr. Heavens' assertion that *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 508 S.E.2d 75, and its description of a "quasi attorney client privilege," entitles Plaintiff to Defendant's privileged communications. First, the court notes that *Gaughan* specifically states that it does *not* apply to first party bad faith cases.

> The principles that are discussed in this opinion with respect to the attorney-client privilege and work product rule apply exclusively to third-party bad faith settlement actions against insurers. [FN 17]
>
> > FN 17. * * * This opinion does not address the extent to which an insured has access to documents in his/her claim file in a first-party bad faith action against an insurer. * * * Because the interests of the insured [sic; insurer] and insured may in fact be inconsistent in a first-party bad faith action, we decline to decide the extent to which the attorney-client privilege/work product rules apply to the claim file of an insured in a first-party bad faith action against an insured [sic; insurer]. [Citation omitted.]

508 S.E.2d at 87.

The court notes that Mr. Heavens cited two cases in his Reply, one from Tennessee and one from the Northern District of West Virginia, neither of which addresses the issues presented here, notwithstanding his assertion that they are on point. *Givens v. Mullikin*, 75 S.W.3d 383 (Tenn. 2002), addressed vicarious liability, not attorney-client privilege and work product doctrine. *Wise v. Travelers Indem. Co.*, 192 F.Supp.2d 506 (N.D.W.Va.2002)(Broadwater, J.), concerned the propriety of remanding to state court certain claims against insurance companies who insured asbestos manufacturers, and had nothing to do with attorney-client privilege and work product doctrine.

Having rejected Plaintiff's reasons for not respecting Defendant's claims of privilege, the court is left with the task of applying established principles of attorney-client privilege and work product doctrine to the discovery at hand.

### Appropriateness of Defendant's Responses

*Request for In Camera Review*

Defendant submitted a privilege log to Plaintiff, which the court has not seen. Plaintiff asks that the court order Defendant to produce all documents listed on the privilege log *in camera* for review. The court declines to undertake such an ardu-

ous task prior to the parties themselves complying with the Federal Rules of Civil Procedure. Rule 26(b)(5) requires a party claiming a privilege or protection to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." If the privilege log is sufficiently detailed to comply with the Rule, then Plaintiff must undertake a review of the privileges and protections asserted to assess their applicability. Then and only then will it be appropriate for Plaintiff to request the court to review the applicability of the privilege or work product protection for a particular document via a motion to compel. Defendant will have an opportunity to respond, and Plaintiff to reply, according to the Local Rules.

*Interrogatories*

Plaintiff contends that interrogatories numbered 1 through 5, 9 through 16, and 22 were not adequately answered by Defendant. After receiving the responses from Defendant, Mr. Heavens wrote to the Kesner law firm (letter dated October 21, 2002), making some concessions in his requests, and Mr. Kesner replied (letter dated October 30, 2002). At that point, apparently, progress stopped.

*Requests for Production of Documents*

All requests for production of documents are in issue. Apparently Mr. Heavens has refused to sign a stipulated protective order concerning documents which Mr. Kesner is willing to produce if Mr. Heavens will sign such an order. It is a common practice among counsel to sign stipulated protective orders concerning proprietary materials and other documents which should not be used other than in connection with a particular case, and Mr. Heavens has provided no good reason for refusing to sign such an order. Counsel should not tender a proposed protective order to the court for entry which will give counsel, and not the court, discretion whether to file documents under seal.

Some of Plaintiff's requests are overbroad and burdensome. In the letter dated October 21, 2002, Mr. Heavens offered to limit some of the requests. The requests should have been written to comply with the Federal Rules of Civil Procedure in the first place. Rule 26 limits discovery to "any matter, *not privileged,* that is relevant to the claim or defense of any party." Effective December 1, 2000, relevancy is no longer defined by the "subject matter" of the claim or defense.

*Requests for Admissions*

Defendant responded to the requests for admissions sufficiently.

### Conduct of Counsel

The court has been dismayed at the behavior displayed by Messrs. Heavens and Kesner in this case. It has had the misfortune of reviewing deposition transcripts which demonstrate that counsel bickered, interrupted, and talked over each other, made disruptive objections and snide remarks, and generally acted unprofessionally. Counsel threatened each other during the depositions with making a telephone call to the undersigned, but did not do so, and the conduct continued. The attorneys have resorted to filing affidavits concerning service of process and alleged threats. The discovery disputes have been unceasing, with no indication that counsel conferred *in good faith* to resolve their differences. Cases have been cited improperly and in a misleading manner. *Ad hominem* arguments have been offered. The court has heard many complaints from older attorneys that the practice of law has changed and has lost much of its professionalism and civility. This case proves the point. The court has spent several days reading the voluminous documents

filed in connection with these motions, and has concluded that the disputes arise predominantly from both attorneys' aggressive conduct and not from the uniqueness of the issues.

It appears to the court that Messrs. Heavens and Kesner have forgotten the important language in the Preamble to the Rules of Professional Conduct, and the Rules themselves, promulgated and adopted by the Supreme Court of Appeals.

A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials.

\*     \*     \*     \*     \*     \*

A lawyer's responsibilities as a representative of clients, an officer of the legal system and a public citizen are usually harmonious. Thus, when an opposing party is well represented, a lawyer can be a zealous advocate on behalf of a client and at the same time assume that justice is being done. So also, a lawyer can be sure that preserving client confidences ordinarily serves the public interest because people are more likely to seek legal advice, and thereby heed their legal obligations, when they know their communications will be private.

Preamble, Rules of Professional Conduct.

The undersigned has, from time to time, admonished attorneys in other civil actions concerning rude, obstructionist and unprofessional behavior, and has repeatedly informed lawyers of the court's expectation that they will conform to professional standards of practice. The court has, in some cases, placed counsel on notice that sanc-

tions will be imposed if conduct does not improve; sometimes severe and expensive sanctions have been ordered. It is impossible to determine whether such remarks and actions have been disseminated; they clearly were not heard by these lawyers.

Accordingly, the court has determined that this is an appropriate time and case in which to set forth these concerns and to admonish counsel concerning their conduct. The court will direct the Clerk to publish this Memorandum Opinion and Order on the District Court's website.

**Procedure for Concluding Discovery**

It is hereby **ORDERED** that the following procedure will be followed by counsel to conclude discovery and to engage in good faith discussions concerning settlement of this case:

1. During the week of **December 2–6, 2002,** counsel will individually review and study cases concerning the attorney-client privilege, the work product doctrine, and the "at issue" exception; with those cases in mind, counsel will carefully review the privilege log prepared by counsel for Defendant to determine whether it complies with the requirements of Rule 26. Counsel for Defendant will promptly amend the log as necessary and immediately inform counsel for Plaintiff whether an amendment is forthcoming. No later than close of business **Friday, December 6, 2002,** Mr. Heavens will advise Mr. Kesner in writing of Plaintiff's first settlement demand, with justification and itemization of the elements of the demand.

2. If the privilege log needs to be amended and/or supplemented, counsel for Defendant will serve Plaintiff with a new version on or before **December 10, 2002.**

3. On or before **December 13, 2002,** Plaintiff will advise Defendant as to those entries on the privilege log, if any, as to which Plaintiff objects to the claim of privi-

lege or protection. On or before the close of business **Friday, December 13, 2002,** Mr. Kesner will respond in writing to Plaintiff's settlement demand, setting forth justification and itemization of Defendant's response.

4. During the week of **December 16–20, 2002,** counsel will meet no fewer than two times in person and will review each interrogatory and request for production of documents in a *good faith* effort to resolve all outstanding discovery disputes. During that week, Mr. Heavens will respond in writing to Mr. Kesner's settlement response, addressing any issues raised by Mr. Kesner. Mr. Kesner will then respond in writing to Mr. Heavens' second demand. Thus the attorneys will conclude two rounds of settlement discussions by **noon, Friday, December 20, 2002.**

5. On **Friday, December 20, 2002, at 3:00 p.m.,** counsel (specifically, Mr. Heavens and Mr. Kesner) shall appear before the court to report on the success of their efforts to reach agreement on outstanding discovery disputes, and to plan any additional and necessary discovery. In addition, counsel will report on efforts to settle this action.

Messrs. Heavens and Kesner are placed on notice that Rule 37 requires a court to impose sanctions on any attorney or party whose position in a discovery dispute is not substantially justified, and the court is prepared to do so.

Accordingly, it is hereby **ORDERED** that Plaintiff's Motion to Compel and Supplemental Motion to Compel are denied without prejudice.

The Clerk is requested to mail a copy of this Order to all counsel of record.